OPINION
W. FLETCHER, Circuit Judge:
Petitioner Manuel Olivas-Motta is a lawful permanent resident charged with removal under 8 U.S.C. § 1227(a)(2)(A)(ii) based on his alleged “conviction of’ two crimes involving moral turpitude (“CIMTs”). Petitioner concedes that the first conviction was for a CIMT. He contends that the second was not.
The Immigration Judge (“IJ”) and Board of Immigration Appeals (“BIA”) concluded that the second conviction was for a CIMT, relying on police reports to determine the nature of the conviction. The Attorney General held in Matter of Silva-Trevino, 24 I. & N. Dec. 687 (A.G. 2008), that an IJ may rely on evidence outside the record of conviction to determine whether a petitioner'has been “convicted of’ a CIMT.. We join the Third, Fourth, and Eleventh Circuits in holding that Silvar-Trevino was wrongly decided. We hold that an IJ and the BIA are confined to the record of conviction in determining whether an alien has been convicted of a CIMT.
I. Background
Olivas-Motta was brought to the United States by his parents when he was ten days old. At the time of his hearing before the IJ he was thirty-three years old, married, and a lawful permanent resident. He was charged with removal under 8 U.S.C. § 1227(a)(2)(A)(ii), which provides that an alien who has been “convicted of two or more crimes involving moral turpitude ... is deportable.”
In 2003, Olivas-Motta was convicted of facilitation of unlawful possession of marijuana under Arizona law. Ariz.Rev.Stat. §§ 13-1004, 13-3405. He concedes that this was a conviction of a CIMT. In 2007, he pled guilty to “endangerment” under *1201 Arizona law. Arizona’s endangerment statute provides:
A. A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.
B. Endangerment involving a substantial risk of imminent death is a class 6 felony. In all other cases, it is a class 1 misdemeanor.
Ariz.Rev.Stat. § 13-1201. Olivas-Motta contends that his conviction of endangerment was not a conviction of a CIMT.
At Olivas-Motta’s removal hearing before the IJ, the government put into evidence the charging document and the written plea agreement for his endangerment conviction. Neither the charging document nor the plea agreement provides information about Olivas-Motta’s underlying conduct. The plea agreement states only that Olivas-Motta “committed endangerment by recklessly endangering another person with a substantial risk of imminent death,” and that he was pleading guilty to a class 6 felony. The government also put into evidence before the IJ three police reports containing information about Oli-vas-Motta’s conduct. Relying on the police reports pursuant to Matter of Silva-Trevino, 24 I. & N. Dec. 687 (A.G.2008), the IJ concluded that Olivas-Motta had been “convicted of’ a CIMT and was therefore removable. She denied cancellation of removal.
The BIA dismissed Olivas-Motta’s appeal. It relied on the police reports pursuant to Silvar-Trevino to conclude that Oli-vas-Motta had been convicted of a CIMT. Olivas-Motta petitioned for review.
II. Jurisdiction and Standard of Review
We have jurisdiction to review questions of law in a petition for review of a removal order. 8 U.S.C. § 1252(a)(2)(D). Latter-Singh v. Holder, 668 F.3d 1156, 1159 (9th Cir.2012). Whether a conviction is for a CIMT is a question of law. Id. We review questions of law de novo. Romero-Mendoza v. Holder, 665 F.3d 1105, 1107 (9th Cir.2011).
III. Discussion
We evaluate the Attorney General’s decision in Silvar-Trevino under the familiar framework of Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When we review an agency’s construction of a statute that it administers, the first step under Chevron is to determine “whether Congress has directly spoken to the precise question at issue.” Id. at 842, 104 S.Ct. 2778. “If the intent of Congress is clear, that is the end of the matter.... ” Id. In that event, courts and agencies alike “must give effect to the unambiguously expressed intent of Congress.” Id. at 842-43, 104 S.Ct. 2778. If the intent of Congress is unclear, we move to the next step, which is to determine whether the agency’s interpretation of the text “is based on a permissible construction of the statute.” Id. at 843, 104 S.Ct. 2778. If the agency’s interpretation is based on a permissible construction, a court must give deference to that interpretation.
In Silvar-Trevino, the Attorney General interpreted two provisions of the Immigration and Naturalization Act (“INA”), one dealing with inadmissibility and the other dealing with removability. In both provisions, a criterion for inadmissibility or re-movability is “conviction of’ one or more CIMTs. The admissibility provision states:
[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a crime involving moral turpitude ... is inadmissible.
*1202 8 U.S.C. § 1182(a)(2)(A)(i)(I) (emphasis added). The removability provision states:
(i) Any alien who ... is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status ...) after the date of admission, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.
(ii) ... Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude ... is deportable.
8 U.S.C. § 1227(a)(2)(A)(i-ii) (emphasis added).
The Attorney General concluded that the statutory language is ambiguous. He wrote:
This opinion begins, as it must, with the statutory text. The Act refers to “moral turpitude” in two separate provisions [quoting 8 U.S.C. §§ 1182(a)(2)(A)(ii)(D and 1127(a)(2)(A)© ].
The statute does not define the term “crime involving moral turpitude.” It is also silent on the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude. To the extent it suggests a method, the text actually cuts in different directions. Some statutory language — for example, use of the phrase “convicted of’ rather than “committed” — suggests that the relevant inquiry should be categorical and focus on whether moral turpitude inheres in the statutory elements required for conviction rather than in the particularized facts of the alien’s crime. Section [1182](a)(2)(A)(i)(I). Other language — for example, the use of the word “involving” and the reference in section [1182](a)(2)(A)(i)(I) to aliens who admit “committing” certain “acts” — seems to call for, or at least allow, inquiry into the particularized facts of the crime.
Faced with this ambiguity, the Board and the Federal courts have long taken the view that judges should begin by engaging in some sort of “categorical” inquiry to determine whether moral turpitude “necessarily inheres” in a conviction under a particular State or Federal criminal statute. To date, however, the Department has not adopted a preferred methodology for conducting that categorical inquiry, and the Board has chosen instead to make such determinations in accordance with the law of the circuit in which an alien’s case arises.
Silva-Trevino, 24 I. & N. Dec. at 692-93 (emphasis added) (some citations omitted).
Later in his opinion, the Attorney General wrote:
[T]he documents generally considered part of the formal record of conviction typically focus only on the charging elements of a specific criminal offense. But moral turpitude is not an element of an offense. And although in many, if not most, cases (for example, cases in which proof of fraudulent intent is required for conviction), examination of the alien’s record of conviction may establish that the alien was in fact convicted of a crime involving moral turpitude, there are other cases (such as the instant one) in which an examination of the formal record by itself does not yield an answer to the question. To limit the information available to immigration judges in such cases means that they will be unable to determine whether an alien’s crime actually “involv[ed]” moral turpitude.
This restriction is hard to square with the text of the Act. The relevant provisions contemplate a finding that the particular alien did or did not commit a crime involving moral turpitude be *1203 fore immigration penalties are or are not applied. Section
[1182] (a) (2) (A) (i) (I), the inadmissibility-provision at issue in this case, refers to “any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude.” Section [1227’s] removability provisions similarly pertain only to “[a]ny alien who is convicted of a crime involving moral turpitude” under certain enumerated circumstances, one of which relates to the alien’s date of admission— a fact that would not typically be reflected in a criminal record of conviction. To impose evidentiary limitations with the result that immigration penalties under section [1182](a) or section [1227] apply to aliens whose crimes did not involve moral turpitude, or with the result that aliens whose crimes did involve moral turpitude escape those penalties, is in tension with the text of those sections.
Id. at 699-700 (first emphases added) (some citations omitted).
Based on this analysis, the Attorney General concluded that an IJ may consult evidence outside the record of conviction in determining whether an alien has been “convicted of’ a CIMT. Silva-Trevino establishes a three-step analysis. At the first step, applying Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the IJ determines whether the crime of conviction is categorically a CIMT. Silva-Trevino, 24 I. & N. Dec. at 690. If the crime is not categorically a CIMT, the IJ moves to the next step. At the second step, applying both Taylor, 495 U.S. at 602, 110 S.Ct. 2143, and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the IJ determines under the modified categorical approach whether the crime is a CIMT. The IJ may consider the “record of conviction” including “documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea and the plea transcript.” Silva-Trevino, 24 I. & N. Dec. at 690. If the crime is not a CIMT under the modified categorical approach, the IJ moves to the final step. At this third step, the IJ may consider evidence outside the record of conviction. In the words of Silva-Trevino, “[w]hen the record of conviction is inconclusive, judges may, to the extent they deem it necessary and appropriate, consider evidence beyond the formal record of conviction.” Id.
We disagree with the Attorney General. There are three critical points in his analysis. The first and second are his definitions of “crime involving moral turpitude” and “convicted of.” The third is his conclusion that “moral turpitude” is not an element of “an offense.” We take these points in turn.
First, the Attorney General clarified the substantive definition of the term “crime involving moral turpitude.” But the Attorney General’s clarification is irrelevant to the question whether evidence outside the record of conviction can be used to determine whether an alien has been “convicted of’ a CIMT. The term CIMT is famously ambiguous. See, e.g., Matter of Short, 20 I. & N. Dec. 136, 139 (BIA 1989) (referring to the term as a “nebulous concept”). The Attorney General provided a distillation of earlier decisions defining a CIMT:
[T]his opinion rearticulates the Department’s definition of the term [CIMT] in a manner that responds specifically to the judicial criticism.... [T]his opinion makes clear that, to qualify as a crime involving moral turpitude for purposes of the Act, a crime must involve both reprehensible conduct and some degree of scienter, whether specific intent, deliberateness, willfulness, or recklessness. This definition rearticulates with greater *1204 clarity the definition that the Board (and many courts) have in fact long applied.
Silva-Trevino, 24 I. & N. Dec. at 689 n. 1. This distillation clarified to some degree the substantive definition of a CIMT. But the clarification of the substantive definition did nothing to clarify the procedures that an IJ may use, or, in the Attorney General’s words, to clarify “the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude.” Id. at 693.
To state the obvious, substance and procedure are not the same thing. There is nothing in the substantive definition of a CIMT, in either the BIA’s definitions or the Attorney General’s distillation, that permits an IJ to use a different procedure than it uses for other crimes in determining whether an alien has been convicted of such a crime. We agree with the Fourth Circuit, which addressed precisely this point:
At issue ... is not what conduct or statutory offense qualifies as a crime involving moral turpitude, but rather what language in the moral turpitude statute informs an adjudicator of the procedure for determining whether a particular conviction qualifies as a crime involving moral turpitude. [The government] conflates these concepts and relies on the asserted ambiguity inherent in the phrase “crime involving moral turpitude” to justify deference to the Attorney General’s three-step procedural framework.

These two concepts, however, require distinct inquiries.

Prudencio v. Holder, 669 F.3d 472, 480 (4th Cir.2012) (emphasis added).
Second, the Attorney General provided a new, and erroneous, definition of “convicted of’ that allows an IJ not only to consider the crimes of which an alien has been convicted, but also to consider crimes he may have committed but of which he was not convicted. In the second long passage quoted above, the Attorney General allowed the IJ to look outside the record of conviction for evidence of CIMTs an alien may have committed as part of his determination whether an alien has been “convicted of’ a CIMT. The Attorney General wrote, “The relevant provisions contemplate a finding that the particular alien did or did not commit a crime involving moral turpitude before immigration penalties are or are not applied.” Silva-Trevino, 24 I. & N. Dec. at 699 (emphasis added). The Attorney General cited § 1182(a)(2)(A)(i)(I) and § 1227, even though § 1227 does not refer to “commission” of crimes that constitute CIMTs. Rather, § 1227 refers only to “conviction of’ CIMTs.
The Attorney General’s new definition conflicts with a clear and long-established definition of “conviction.” The INA provides, except in cases where an adjudication of guilt has been withheld, that “ ‘conviction’ means, with respect to an alien, a formal judgment of guilt of the alien....” 8 U.S.C. § 1101(a)(48)(A). The INA specifies what documents an adjudicator may consult as proof of a conviction. See id. at § 1229a(c)(3)(B) (“[A]ny of the following documents or records ... shall constitute proof of a criminal conviction: [specifying documents constituting the record of conviction].”). Under this definition, an alien has been “convicted of’ only those acts that form the basis for the conviction, as shown by the record of his conviction. An alien has not been “convicted of’ acts that he may have committed but that do not form the basis for the conviction.
The Attorney General’s analysis in Silva-Trevino does nothing to cast doubt on the validity of this well-established definition. He wrote that the “use of the word ‘involving’ and the reference in section *1205 [1182](a)(2)(A)(i)(I) to aliens who admit ‘committing’ certain ‘acts’ ... allow[s] inquiry into the particularized facts of the crime.” Silva-Trevino, 24 I. & N. Dec. at 693 (emphasis added). But he misunderstood the plain meaning and context of the words he invoked. The word “involving” is embedded in the substantive term “crime involving moral turpitude,” and it gives meaning to that term. It provides no help in defining the phrase “convicted of.” Nor does the phrase “admits committing” provide help. The INA provides that an alien who has been “convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a crime involving moral turpitude” is inadmissible. 8 U.S.C. § 1182(a) (2) (A) (i)(I) (emphasis added). “Convicted of’ and “admits committing” are separate phrases with separate meanings. Under 8 U.S.C. § 1182(a)(2)(A)(i)(I), an alien is inadmissible if he has been convicted of a CIMT, or if he admits to having committed acts that constitute a CIMT. Under § 1227(a)(2)(A)(i-ii), an alien is deportable only if he has been “convicted of’ CIMTs.
In Tokatly v. Ashcroft, 371 F.3d 613 (9th Cir.2004), we explicitly rejected the argument that we may look to conduct that an alien “committed” to determine the acts he has been “convicted of.” We wrote:
Like all of the other removal provisions we have analyzed in accordance with the categorical and modified categorical approach, the plain language of the “crime of domestic violence” provision clearly bases deportability on the nature of the alien’s conviction, rather than on the alien’s actual conduct. We are required to determine whether To-katly has been “convicted of a crime of domestic violence” — not whether he in fact committed such a crime....
To adopt the government’s approach would require us to look to “conduct” rather than “conviction.” ... [W]hen Congress wants to make conduct the basis for removal it does so specifically.
Id. at 622.
Third, the Attorney General concluded that “moral turpitude” is not “an element of an offense.” Because in his view moral turpitude is not an element of “an offense,” it is not an element of the federal generic CIMT. Therefore, in the Attorney General’s view, an IJ is not confined to the record of conviction in determining whether an alien has been convicted of a crime involving moral turpitude. Silva-Trevino, 24 I. & N. Dec. at 699-700. The Attorney General is mistaken in his conclusion that “moral turpitude” is not “an element” of a CIMT. This may be seen from an analysis of the Supreme Court’s decision in Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009).
In determining the removability of Nijhawan under 8 U.S.C. § 1227(a)(2)(A)(iii), the IJ was required to determine whether he had been convicted of an “aggravated felony” under 8 U.S.C. § 1101(a)(43). Nijhawan, 129 S.Ct. at 2297. The Court in Nijhawan divided generic felony descriptions into two categories.
In the first category are descriptions of generic crimes that are complete unto themselves. Id. at 2298. In the second category are descriptions of generic crimes with an added description of circumstances of the crimes. Id. Nijhawan had been convicted of an aggravated felony consisting of an offense involving fraud or deceit, with a specified loss amount. The question before the Court was whether the amount of loss was an element of the generic aggravated felony, in which case the IJ could consider only evidence in the record of conviction, or whether the amount of loss was merely a circumstance of some generic felonies involving “fraud or deceit,” in which case the IJ could consider evidence outside the record of *1206 conviction to determine whether that circumstance existed. Id. at 2298-99. The Court gave examples in each group.
An example in the first category, taken from the Armed Career Criminal Act, is a crime that “involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); Nijhawan, 129 S.Ct. at 2300. The Court wrote that this statutory description “refers to crimes as generically defined.” 129 S.Ct. at 2300 (citing James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)). Other examples in the first group are some of the aggravated felonies described in 8 U.S.C. § 1101(a)(43), including “murder, rape, or sexual abuse of a minor,” § 1101(a)(43)(A), “illicit trafficking in a controlled substance,” § 1101(a)(43)(B), and “illicit trafficking in firearms or destructive devices,” § 1101(a)(43)(C). See Nijhawan, 129 S.Ct. at 2300.
Examples in the second category include some of the other aggravated felonies described in § 1101(a)(43). One example is “‘falsely making, forging, counterfeiting, mutilating, or altering a passport,’ ... ‘except in the case of a first offense for which the alien ... committed the offense for the purpose of assisting ... the alien’s spouse, child or parent ... to violate a provision of this chapter.’ ” Id. (quoting 8 U.S.C. § 1101(a)(43)(P)) (emphasis by the Court) (first omission added). Another example is “ ‘offense[s] ... described in section 2421, 2422, or 2423 of title 18 (relating to transportation for the purpose of prostitution) if committed for commercial advantage.’ ” Id. at 2301 (quoting 8 U.S.C. § 1101(a)(43)(K)(ii)) (emphasis and omission by the Court). A third example is “an offense ‘described in section 7201 of title 26 (related to tax evasion) in which the revenue loss to the Government exceeds $10,000.’ ” Id. at 2301 (quoting 8 U.S.C. § 1101(a)(43)(M)(ii)) (emphasis by the Court). According to the Court, the non-italicized language in these three examples describes generic crimes, and the italicized language describes circumstances rather than elements of the crimes. Id. at 2301-02.
The crime at issue in Nijhawan was “an offense that ... involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” Id. (quoting 8 U.S.C. § 1101(a)(43)(M)(i)) (emphasis added) (omission by the Court). The Court concluded that the generic felony was an offense that involves fraud or deceit, and that the elements of the generic crime were contained in that description. Id. The amount of loss was a circumstance rather than an element of the crime. Because the loss amount was a circumstance rather than an element, the IJ could consider evidence outside the record of conviction to determine whether that circumstance existed. Id. at 2301-03.
This understanding of Nijhawan was confirmed in Carachuri-Rosendo v. Holder, — U.S. -, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010). In considering whether Carachuri-Rosendo was eligible for cancellation of removal, the IJ had to decide whether the state-law crime of which he had been convicted was the aggravated felony of “illicit trafficking” under § 1101(a)(43)(B). Id. at 2580-81. The Court held that uncharged conduct could not be considered in determining whether Carachuri-Rosendo had been convicted of “illicit trafficking.” Id. at 2589. In rejecting the government’s argument that the IJ could look at uncharged conduct, the Court wrote:
[Mjost fundamentally, the Government’s position ignores the text of the INA, which limits the Attorney General’s cancellation power only when, inter alia, a noncitizen “has ... been convicted of a[n] aggravated felony.” The text thus *1207 indicates that we are to look to the conviction itself as our starting place, not to what might have been or could have been charged.
Id. at 2586 (alteration and emphasis in original). The Court distinguished the crime in Nijhawan, noting that Nijhawan had been convicted of a generic felony “involvfing] fraud or deceit,” and that the loss amount was not an element of the crime. It wrote:
[Ujnlike the instant case, there was no debate in Nijhawan over whether the petitioner actually had been “convicted” of fraud; we only considered how to calculate the amount of loss once a conviction for a particular category of aggravated felony has occurred.
Id. at 2586-87 n. 11.
Applying the analysis of Nijhawan to the question before us, the question is whether the term “crime involving moral turpitude” contains only a description of the elements of the generic crime, or whether the words “involving moral turpitude” in that term describe a circumstance of the crime. If the former, an IJ is confined to the record of conviction to determine whether an alien has been convicted of the crime. If the latter, an IJ may go beyond the record of conviction to determine if that circumstance existed.
An application of Nijhawan to CIMTs begins with a recognition that a CIMT is a generic crime rather than a particular crime that has been charged in an individual case. So far as we are aware, no state has a particular crime called “crime involving moral turpitude.” The Attorney General is therefore correct in observing that moral turpitude is not “an element of an offense” if, by “offense” the Attorney General means a particular crime rather than the categorical offense of CIMT. Silva-Trevino, 24 I. & N. Dec. at 699 (emphasis added). However, the Attorney General’s observation is irrelevant to an analysis of a generic crime such as a CIMT. With respect to the generic crime of “crime involving moral turpitude,” moral turpitude is an element of that crime. For two reasons, Nijhawan compels that conclusion.
First, contrary to the suggestion of the Attorney General, use of the word “involving” in the description of a CIMT is entirely consistent with “moral turpitude” being an element of the generic crime of CIMT. See Silva-Trevino, 24 I. & N. Dec. at 693 (“Other language — for example, use of the word ‘involving’ ... — seems to call for, or at least allow, inquiry into the particularized facts of the crime.”). The Court in Nijhawan gave, as one example of a generic crime whose description contained an element of that crime, a crime punishable by imprisonment of more than a year that “involves conduct that presents a serious potential risk of physical injury to another.” 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added); see also Nijhawan, 129 S.Ct. at 2300 (citing James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)). Further, as to the crime actually at issue in Nijhawan, the Court held that the underlying generic crime was “an offense that ... involves fraud or deceit,” and that “fraud or deceit” were elements of the offense. Nijhawan, 129 S.Ct. at 2301 (quoting 8 U.S.C. § 1101(a)(43)(M)(ii)) (emphasis added).
Second, there is no separately described generic crime for which “involving moral turpitude” is a circumstance. In each of the examples in Nijhawan in which there was a circumstance that could be proved by evidence outside the record of conviction, there was a separately defined crime to which a description of the circumstance had been added. Those crimes were “falsely making, forging, counterfeiting, mutilating, or altering a passport”; “offense[s] ... described in section 2421, 2422, or 2423 of title 18 (relating to trans *1208 portation for the purpose of prostitution)”; and an “offense ‘described in section 7201 of title 26 (related to tax evasion).’ ” Id. at 2301-02. In striking contrast, there is no separately described crime to which “involving moral turpitude” is added as a circumstance. If one eliminates the phrase “involving moral turpitude” from the phrase “crime involving moral turpitude,” there is no separately defined crime. There is only the single word “crime,” covering the entire universe of crime. The words “involving moral turpitude” are thus integral to the description of the generic crime of CIMT and constitute an element of that generic crime.
Three of our sister circuits agree that Silva-Trevino was wrongly decided. In Jean-Louis v. Attorney Gen., 582 F.3d 462 (3d Cir.2009), the Third Circuit rejected the argument that the word “involving” in the phrase “crime involving moral turpitude” permits consideration of evidence beyond the record of conviction. The court concluded that the entire phrase “crime involving moral turpitude” is a “term of art” describing a generic crime. 582 F.3d at 477. Relying in part on our decision in Tokatly, the Third Circuit also rejected the Attorney General’s argument that the use of “convicted of’ and “committed” in § 1182(a)(2)(A)(i)(I), the inadmissibility provision, makes the statute ambiguous. It wrote:
It could not be clearer from the text of the statute — which defines “conviction” as a “formal judgment of guilt,” and which explicitly limits the inquiry to the record of conviction or comparable judicial record evidence — that the CIMT determination focuses on the crime of which the alien was convicted — not the specific acts that the alien may have committed.
Id. at 474 (footnote omitted). The court concluded:
The ambiguity that the Attorney General perceives in the INA is an ambiguity of his own making, not grounded in the text of the statute, and certainly not grounded in the BIA’s own rulings or the jurisprudence of courts of appeals going back for over a century.
Id. at 473.
Two other circuits have agreed with the Third Circuit’s decision in Jean-Louis. In Prudencio v. Holder, 669 F.3d at 482, the Fourth Circuit wrote:
[W]e conclude that the plain language of the moral turpitude statute is not ambiguous. Because the relevant statutory language refers only to convictions, not to conduct or to “committing” acts, there is no uncertainty in the statutory language created by the use of the phrase “convicted of’ in the same statute as the words “committing” and “involving.” Thus, in a case such as the present one in which the only issue is the alien’s prior conviction, the statute unambiguously directs that an adjudicator consider only the conviction itself, and not any underlying conduct.
In Fajardo v. U.S. Atty. Gen., 659 F.3d 1303, 1309 (11th Cir.2011), the Eleventh Circuit agreed that the phrase “convicted of’ is unambiguous and explicitly agreed with the Third Circuit that the phrase “crime involving moral turpitude” is a “term of art” describing a generic crime. Id. at 1309-10.
We are aware that two circuits disagree. The Seventh and Eighth Circuits both permit the IJ to consider evidence outside the record of conviction to determine whether an alien has been convicted of a CIMT. In Ali v. Mukasey, 521 F.3d 737, 741 (7th Cir.2008), the Seventh Circuit wrote that, with respect to “crimes involving moral turpitude,” there are two questions a court must answer: first, “the fact of the prior conviction,” for which the IJ cannot go *1209 outside the record of conviction, and second, “the appropriate classification of that conviction, which may require additional information.” Id. Though it did not state the matter in precisely these terms, we understand the court in Ali to have concluded that moral turpitude is not an element of the generic offense of a CIMT that can be proved only by evidence in the record of conviction, but rather a descriptive circumstance added to the separately defined particular crime of which the petitioner has actually been convicted. In Bobadilla v. Holder, 679 F.3d 1052, 1055 (8th Cir.2012), the Eighth Circuit wrote that “[bjecause ‘moral turpitude’ is not an element of any criminal offense,” the IJ can look beyond the fact of conviction to the circumstances of the crime to determine whether moral turpitude was involved. For the reasons given above, we disagree with these courts’ conclusion that “moral turpitude” is not an element of a CIMT.
We agree with the Third, Fourth, and Eleventh Circuits that the relevant provisions of the INA are not ambiguous and that we do not owe Chevron deference to the Attorney General’s opinion in Silva-Trevino. A “crime involving moral turpitude” is a generic crime whose description is complete unto itself, such that “involving moral turpitude” is an element of the crime. Because it is an element of the generic crime, an IJ is limited to the record of conviction in determining whether an alien has been “convicted of’ a CIMT. We conclude that Silvar-Trevino was wrongly decided, and that the IJ and the BIA improperly considered evidence beyond the record of conviction in holding that Olivas-Motta was “convicted of’ a “crime involving moral turpitude.”
IV. Postscript
Two years after it decided Olivas-Mot-ta’s appeal, the BIA concluded that reckless endangerment “with a substantial risk of imminent death” in violation of Arizona law is categorically a CIMT. See In re Leal, 26 I. & N. Dec. 20, 27 (BIA 2012). The government has filed a post-argument brief in this court based on In re Leal. It does not request a remand to the BIA to allow it to apply In re Leal. Rather, it requests only that we deny Olivas-Motta’s petition on the current record.
We decide a petition for review based on the grounds relied upon by the BIA. Ali v. Holder, 637 F.3d 1025, 1029 (9th Cir.2011). The BIA did not decide Olivas-Motta’s appeal based on a conclusion that the Arizona endangerment statute is categorically a CIMT. Indeed, the BIA held specifically in Olivas-Motta’s appeal that the Arizona endangerment statute is not categorically a CIMT. We therefore cannot deny Olivas-Motta’s petition on tlie ground that it is. We intimate no view as to correctness of In re Leal. We hold only that we cannot deny Olivas-Motta’s petition based on a conclusion reached by the BIA in a separate case decided two years after it decided the appeal now before us.
Conclusion
For the foregoing reasons, we grant the petition and remand for proceedings consistent with this opinion.
We therefore do not remand in order to allow the BIA to apply its decision in In re Leal.
Petition GRANTED and REMANDED.