**REVISED FEBRUARY 6, 2014**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2014

Lyle W. Cayce
Clerk

No. 11-60464

CRISTOVAL SILVA-TREVINO, also known as Cristobal Silva-Trevinio,

Petitioner

v.

ERIC. H. HOLDER, Jr., UNITED STATES ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before BENAVIDES, OWEN, and SOUTHWICK, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Cristoval Silva-Trevino challenges a new method the Attorney General and the Board of Immigration Appeals ("the Board") used to determine that he had been convicted of a crime involving moral turpitude for the purposes of admissibility under § 212 of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1100, *et seq*. Because we find the contested method inconsistent with the unambiguous language of the relevant statutory provision, we vacate the Board's determination.

No. 11-60464

I.

This case arises out of proceedings to remove Silva-Trevino pursuant to § 237 of the INA, which permits the removal of aliens convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Silva-Trevino concedes that he has been convicted of an aggravated felony (indecency with a child, § 21.11(a)(1) of the Texas Penal Code), but he seeks an adjustment of status under § 245(a), such that he might avoid removal. *See id.* § 1255(a). The immigration judge rejected this request, finding that Silva-Trevino's offense qualified as a crime involving moral turpitude, thus rendering him inadmissible and ineligible for discretionary relief. *See id.* § 1182(a)(2)(A)(i).

After the Board vacated the decision, the Attorney General certified the case for review, as permitted by 8 C.F.R § 1003.1. In the resulting opinion, the Attorney General outlined a new method for determining whether an alien has been convicted of a crime involving moral turpitude. *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008). This method, contrary to our precedent, allows a judge to consider "evidence beyond the formal record of conviction" to the extent the judge deems "necessary and appropriate." *Id.* at 699. The Attorney General also held that where a conviction record indicates "intentional sexual contact with a minor," immigration judges should look for evidence that the alien "knew or should have known" that the victim was, in fact, a minor. *Id.* at 705.

On remand from the Attorney General, the Board sent the case back to the immigration judge, who applied the new rule, using Silva-Trevino's stipulations, testimony, and the victim's birth certificate to conclude that Silva-

2

No. 11-60464

Trevino should have known the victim was a minor.  This extrinsic evidence, combined with the record of conviction, was sufficient for the judge to find that Silva-Trevino had been convicted of a crime involving moral turpitude.  The Board affirmed.

Silva-Trevino now seeks review of the decision, arguing that the Attorney General's method of classification is inconsistent with binding precedent and contradicts the express language of the INA.  In the alternative, he contends that the method violates due process as applied to his case.  Silva-Trevino also asks us to compel the Attorney General to supplement the record.  However, as Silva-Trevino has not identified any specific omission from the record, or pointed to any relevant legal authority, he has waived this argument.  FED. R. APP. P. 28(a)(9)(A), (a)(10).

## II.

The INA affords this Court jurisdiction to review orders of removal.  8 U.S.C. § 1252(b).  We review questions of law *de novo*.  *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 320 (5th Cir. 2005).  The instant case requires us to decide whether the Attorney General's interpretation of the INA supersedes this Circuit's longstanding precedent.  Where a statute is ambiguous, and an implementing agency's construction is reasonable, "*Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation."  *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).  Therefore, because Congress has clearly

No. 11-60464

delegated to the Attorney General the authority to resolve questions of law regarding the INA, our precedent will prevail over his interpretation only if our construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Brand X*, 545 U.S. at 982; *see also* 8 U.S.C. § 1103(a)(1) (delegating interpretive authority to the Attorney General).

III.

In relevant part, § 212(a)(2)(A)(i) of the INA renders inadmissible "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i). As a consequence of this inadmissibility, the removable alien is ineligible for discretionary relief via an adjustment of status. 8 U.S.C. § 1255(a). Here, Silva-Trevino was denied relief because the conviction record, when paired with extrinsic evidence, indicated that he had been convicted of a crime involving moral turpitude. The Attorney General does not argue that Silva-Trevino has admitted to any such crime or act. We therefore limit our analysis to the "convicted of" clause of § 212(a)(2)(A)(i).

We should emphasize that the question before this Court is not whether Silva-Trevino's offense constitutes a crime involving moral turpitude. Rather, we consider only the means by which judges may determine whether a given conviction qualifies. We have long held that, in making this determination, judges may consider only "the inherent nature of the crime, as defined in the statute," or, in the case of divisible statutes, "the alien's record of conviction." *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006) (internal quotation

4

No. 11-60464

marks and citations omitted); *U.S. ex rel. McKenzie v. Savoretti*, 200 F.2d 546, 548 (1952). We do not permit extrinsic inquiry into the "circumstances surrounding the particular transgression." *Amouzadeh*, 467 F.3d at 455.

In reviewing Silva-Trevino's case, however, the Attorney General established a new approach that requires immigration judges and the Board to:

> (1) look to the statute of conviction under the categorical inquiry and determine whether there is a "realistic probability" that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude; (2) if the categorical inquiry does not resolve the question, engage in a modified categorical inquiry and examine the record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript; and (3) if the record of conviction is inconclusive, *consider any additional evidence deemed necessary or appropriate to resolve accurately the moral turpitude question.*

24 I. & N. Dec. at 704 (emphasis added). Today we must determine whether the relevant clause of INA § 212 is sufficiently ambiguous such that our precedent yields to the third step in this method. We need not address the first two steps. Although this is a matter of first impression for us, six of our sister circuits have already reached the issue. Two concluded that the phrase is ambiguous, while the other four found that it is not.[1] We agree with the majority of our sister circuits that the phrase is not ambiguous.

---

[1] The Third, Fourth, Ninth, and Eleventh Circuits found the language unambiguous and thus withheld deference. *See generally Olivas-Motta v. Holder*, 716 F.3d 1199 (9th Cir. 2013); *Prudencio v. Holder*, 669 F.3d 472 (4th Cir. 2012); *Fajardo v. U.S. Attorney General*, 659 F.3d 1303 (11th Cir. 2011); *Jean-Louis v. Attorney General of U.S.*, 582 F.3d 462 (3d Cir.

No. 11-60464

Fortunately, we need not speculate as to what is meant by the phrase "convicted of" a crime of moral turpitude, because Congress had the foresight to tell us. The statutory definitions indicate that "conviction means, with respect to an alien, a formal judgment of guilt . . . ." 8 U.S.C. § 1101(48)(A). The statute then includes a list of the seven official documents that may be considered as proof of such a conviction. *Id.* § 1229a(c)(3)(B). There is no mention of any additional evidence; and the introductory phrasing, "any of the following documents or records," gives no indication that extrinsic evidence is contemplated. *Id.*

We do not doubt that extrinsic inquiry would be relevant and convenient when classifying convictions. However, it would be a little odd to read this provision as allowing additional relevant evidence when, historically, Congress has simply told us when adjudicators can consider evidence on account of its relevance.[2] In fact, this very statute stipulates that the immigration judge "shall consider any credible evidence" relevant to the removal of victims of

2009). The Seventh Circuit, however, has afforded the decision deference under *Chevron,* 467 U.S. 837 (1984). *See Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008) ("[A]s the board has done this through formal adjudication[,] the agency is entitled to the respect afforded by the *Chevron* doctrine."). The Eighth Circuit initially rejected the *Silva-Trevino* approach, but a later panel held that the opinion warrants deference. *Compare Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) ("We are bound by our circuit's precedent, and to the extent *Silva-Trevino* is inconsistent, we adhere to circuit law."), *with Bobadilla v. Holder*, 679 F.3d 1052, 1057 (8th Cir. 2012) ("We conclude that the methodology is a reasonable interpretation of the statute and therefore must be given deference by a reviewing court.").

[2] *E.g.*, 28 U.S.C. § 1867(d) (Moving party "shall be entitled to present . . . any other relevant evidence."); 30 U.S.C. § 923(b) ("[A]ll relevant evidence shall be considered."); 42 U.S.C. § 610(b)(2) ("[T]he Board shall conduct a thorough review of the issues and take into account all relevant evidence."); 15 U.S.C. § 6603(g)(3) (allowing courts and administrative officials to consider "other relevant evidence").

No. 11-60464

family violence.  8 U.S.C. § 1227(a)(7)(B).  Yet with respect to the convictions at issue here, there is no such authorization.  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  Consequently, we assume that if Congress had intended for immigration judges to consider relevant extrinsic evidence in order to classify a conviction as a crime of moral turpitude, the legislators would have included language to that effect.

Moreover, the Supreme Court has already explained that, where Congress directs courts to determine whether a prior conviction qualifies as a certain type of crime, the use of a categorical approach is intended.  *Taylor v. United States*, 495 U.S. 575 (1990).  In *Taylor*, the Court considered whether, when determining if prior offenses constitute previous convictions for the purposes of 18 U.S.C. § 924(e), adjudicators may consider "the particular facts underlying those convictions."  *Id.* at 600.  The Court held that adjudicators may not look beyond the record and associated statutory elements, reasoning that:

> [T]he language of 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions. Section 924(e)(1) refers to "a person who . . . has three previous convictions" for - not a person who has committed - three previous violent felonies or drug offenses.

7

*Id.* In the case before the panel, the relevant statutory language directs us to look for a conviction, rather than an act committed, so use of a categorical approach is implied.

In interpreting the language at issue in *Taylor*, that Court also looked to the traditional judicial construction of the phrase, and to recent amendments to the statute. *Id.* at 600–01. Here, legislative ratification of the longstanding, nearly universal use of the categorical inquiry confirms that Congress has unambiguously spoken to this issue. The categorical approach has been used in the immigration context for at least a century.[3] By 1954 its use was so widespread that the Board clarified and endorsed the method.[4] Since then, the Board and all of the federal courts have used some version of the categorical or modified categorical inquiry.[5] This widespread continuous use is significant for our purposes because, where there exists a longstanding judicial construction, "Congress is presumed to be aware of the interpretation . . . and to adopt that interpretation [if] it re-enacts that statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). It hardly seems unreasonable to

---

[3] *Moncrieffe v. Holder*, --- U.S. ----, 133 S. Ct. 1678, 1685 (2013) (referring to the history as compiled by Alina Das in *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. REV. 1669 (2011)).

[4] *Matter of R-----*, 6 I. & N. Dec. 444, 448 (B.I.A. 1954).

[5] *See Matter of Velazquez-Herrera*, 24 I. &. N. Dec. 503, 513 (B.I.A. 2008) ("For nearly a century, the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a 'conviction' for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien was *convicted*, to the exclusion of any other criminal or morally reprehensible acts he may have *committed*."). For the purpose of resolving the present issue, it is not necessary to consider the minor variations in the way that various federal courts have articulated and employed the categorical approach. *See Jean-Louis*, 582 F.3d at 474 n.16 (collecting cases and describing similarities).

No. 11-60464

abide by this assumption here, as Congress has had numerous opportunities to make any desired changes.[6]  In fact, in the wake of the Oklahoma City bombing, and again after 9/11, Congress amended § 212 to ensure its efficacy.[7] In 1996, Congress expanded the agency's power to remove aliens convicted of crimes involving moral turpitude.[8]  In addition, lawmakers expedited certain deportation proceedings and later increased the number of grounds for inadmissibility.[9]  In light of such extensive attention to the statute, it seems that Congress would have given some indication if it wanted adjudicators to "abandon" the longstanding categorical approach in favor of an "elaborate factfinding process." *Taylor*, 495 U.S. at 601.  And yet the relevant language remained unchanged.[10]  As a consequence, and because the lawmakers have

---

[6] *See* 8 U.S.C.A. § 1182 Historical and Statutory Notes (West 2005) (listing dozens of amendments to § 212 of the INA).

[7] Section 212 of the INA was substantively amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended in scattered sections of the U.S. Code); The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) (codified as amended in scattered sections of the U.S. Code); and USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 272 (2001) (codifed as amended in scattered sections of the U.S. Code).  As the threat of terrorism increased, so did legislative attention to deportation proceedings.  *See* President's Statement on Signing the Antiterrorism and Effective Death Penalty Act of 1996, 32 Weekly Comp. of Pres. Doc. 719, 721 (Apr. 29, 1996) (discussing threats of terrorism, encouraging additional immigration reform, and anticipating IIRIRA); Administration's Draft Anti-Terrorism Act of 2001: Hearing before the H. Comm. on the Judiciary, 107th Cong. 3–12 (2001) (statement of John Ashcroft, Att'y Gen. of the United States) (explaining the (then unnamed) USA PATRIOT Act, and the need for changes to deportation and inadmissibility proceedings).

[8] AEDPA § 435, 110 Stat. 1274.

[9] IIRIRA §§ 301–08, 110 Stat. 3009-575 *et seq*.; USA PATRIOT Act § 411, 115 Stat. 345.

[10] In fact, the only recent bill attempting to supersede categorical inquiry was abandoned in the Senate Judiciary Committee.  *See* Armed Career Criminal Sentencing Act

No. 11-60464

revisited the section so often, we are confident that Congress is aware of the universal judicial interpretation of the "convicted of" clause of § 212, and we can assume that Congress expects us to abide by that construction. *Lorillard*, 434 U.S. at 583. Where, as here, Congress has spoken directly to the statutory question at hand, our precedent need not yield to an agency's contrary interpretation. *Burks v. U.S.*, 633 F.3d 347, 360 (5th Cir. 2011).

IV.

Nonetheless, the Attorney General urges this Court to defer to his interpretation of § 212(a)(2)(A)(i). First, he argues that the statutory language is ambiguous. Second, he contends that the Supreme Court and our precedent already authorize immigration judges to look beyond the conviction record when making similar determinations. Finally, he insists that various practical considerations weigh in favor of his method. We find the arguments unpersuasive.

In arguing that "convicted of a crime involving moral turpitude" is ambiguous, the Attorney General focuses on the inherent lack of clarity in the concept of moral turpitude. He observes, for example, that "[t]he statute does not define the term 'crime involving moral turpitude.'" 24 I. & N. Dec. at 693. Indeed, no one suggests otherwise. This Court, in fact, has always recognized the agency's authority to define the phrase. *See Hyder v. Keisler*, 506 F.3d 388, 390 (5th Cir. 2007) (affording "substantial deference"). Yet the lack of a precise definition of moral turpitude does not infuse ambiguity into the word

---

of 2010, S. 4045, 111st Cong. (2010) (proposing to supersede its use in the context of the Armed Career Criminal Act, 18 U.S.C. 924(e)).

conviction.   As our sister circuits have observed, "At issue . . . is not what conduct or statutory offense qualifies as a crime involving moral turpitude, but rather what language in the moral turpitude statute informs an adjudicator of the procedure for determining whether a particular conviction qualifies . . . ." *Olivas-Motta*, 716 F.3d at 1204 (quoting *Prudencio*, 669 F.3d at 480).   And even in the Eighth Circuit case the Attorney General points to as support for the purported ambiguity, the majority of the panel concluded that moral turpitude is not so undefined as to preclude a categorical inquiry.   *Marciano v. I.N.S.*, 450 F.2d 1022, 1025 (8th Cir. 1971).

The Attorney General also asserts that section 212's juxtaposition of the phrase "who is convicted of" with the phrases "who admits having committed" and "who admits committing" suggests that Congress wants adjudicators to focus on the facts and circumstances of the underlying crime.   8 U.S.C. § 1182(a)(2)(a)(i).   The three phrases taken together, he contends, "contemplate a finding that the particular alien did or did not commit a crime."   24 I. & N. Dec. at 699.   The argument is, apparently, that because the latter two phrases anticipate an examination of facts and circumstances, Congress must have intended such an inquiry with respect to convictions, too.   We respectfully disagree.   It is an elementary canon of construction that when Congress uses different terms, "each term [is] to have a particular, nonsuperfluous meaning." *Bailey v. United States*, 516 U.S. 137, 146 (1995) (superseded by statutory amendment on other grounds, as described in *United States v. O'Brien*, 560 U.S. 218 (2010)).   For example, where a statute refers to firearms "used" and those "intended to be used," the latter phrase does not anticipate active

engagement in the way the former term does, because to interpret otherwise would create redundancy. *Id.* Similarly, in this context, to assume that "convicted" connotes the same procedure as "committed" is to strip the word of its statutory definition and render it superfluous. We cannot accept such an interpretation. The juxtaposition does not infuse any ambiguity into the "convicted of" clause, but only serves to underscore the distinct meaning of that phrase.

We are aware that two binding cases permit the adjudicator to look beyond the conviction record in ostensibly analogous proceedings. *See Nijhawan v. Holder*, 557 U.S. 29 (2009); *Bianco v. Holder*, 624 F.3d 265 (5th Cir. 2010). In *Nijhawan*, the Supreme Court allowed evidence beyond the record in determining whether an alien had been convicted of an "offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 557 U.S. at 32 (interpreting 8 U.S.C. § 1101(a)(43)(M)(i)). In *Bianco*, this Court permitted an examination of extrinsic evidence in order to determine whether an alien had been convicted of a "crime of domestic violence." 624 F.3d at 267 (interpreting 8 U.S.C. § 1227(a)(2)(E)(i)). The Attorney General believes that *Nijhawan* and *Bianco* bear on the analysis of this case because each of the three cases requires courts to determine whether a given conviction falls into a statutorily defined category of convictions.

We find the statutory language before us readily distinguishable from the language at issue in *Nijhawan* and *Bianco*. Note that the language in each of the earlier two cases describes a subset of a category of convictions, rather than an entire category. As a consequence, relevant convictions can only be

identified by looking to the circumstances that define the subset. Consider that in *Nijhawan*, the category is crimes of fraud and deceit, and the subset is those resulting in a loss of at least $10,000 to the victim. Likewise, in *Bianco*, the category is crimes of violence as defined by 18 U.S.C. § 16, and the subset is crimes of violence in which the victim is a covered relative. By creating these factually defined subsets, Congress necessarily authorizes adjudicators to look beyond a conviction record to the circumstances of an underlying offense. *Nijhawan*, 557 U.S. at 30. Yet the statute at issue here defines no such subset: qualifying offenses are *all* crimes involving moral turpitude, as that generic crime has been defined by federal authorities and common law. Consequently, we find no analogous permission to abandon the categorical approach and look beyond the conviction record. *See Moncrieffe,* 133 S. Ct. at 1691 (explaining that "circumstance-specific examination" of conduct is not permitted in determining whether an immigrant was convicted of a generic crime).

It is, of course, possible to argue that that moral turpitude is simply another factual circumstance that defines a subset. *See Ali*, 521 F.3d at 741. Yet to conceive of moral turpitude in this way is to disregard a century of jurisprudence, despite the fact that courts generally interpret terms of art in keeping with "the legal tradition and meaning" and "cluster of ideas . . . attached" to the phrase. *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also Olivas-Motta*, 716 F.3d at 1205–08 (finding *Nijhawan* inapplicable to INA § 212); *Jean-Louis*, 582 F.3d at 477–78 (explaining that it is historically, linguistically, and legally erroneous to think of moral turpitude as a factual circumstance). Consequently, and because the statutory language in

No. 11-60464

*Nijhawan* and *Bianco* is distinguishable from the relevant clause in § 212, we decline the invitation to apply the reasoning in those cases to the case at bar.

The Attorney General also offers various policy justifications for his proposed method of classifying convictions. He first asserts that additional evidence must be made available because moral turpitude is not an element of any crime, and thus its presence or absence may not be clear from the face of charging documents. We do not find this argument convincing. The fact that moral turpitude is not an element of any crime need not—and in fact does not—imply that the characteristics of a crime involving moral turpitude are not present on the conviction record made available by Congress. Consider, for example, that larceny may not be an "element" of any crime in Texas; yet the elements of common law larceny (the taking and carrying away of another's property without consent and with intent to steal) are elements of several offenses defined by chapters 29 and 31 of the Texas Penal Code. So just as the characteristics of larceny are evinced by an examination of a charge of aggravated robbery under § 29.03 of the Texas Penal Code; so, too, are the hallmarks of a crime involving moral turpitude often present on the face of a conviction record. In fact, the Attorney General himself concedes that "in many, if not most, cases . . . examination of the alien's record of conviction may establish that the alien was in fact convicted of a crime involving moral turpitude." *Silva-Trevino*, 24 I. & N. Dec. at 699. We have no reason to doubt his observation, and we conclude that any exceptions are not sufficient cause for us to depart from the procedure authorized by the statutory language. *See MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 233–34 (1994) (rejecting an

14

No. 11-60464

agency interpretation inconsistent with unambiguous statute, though the agency's interpretation might have better facilitated legislative intent).

The Attorney General further contends that we should defer to his interpretation of § 212(a)(2)(A)(i) because he is charged with ensuring uniform application of the law. This argument is, if anything, a little ironic. Until he intervened in *Silva-Trevino*, there was broad consensus among the federal courts that the "convicted of" language precludes consideration of evidence beyond the conviction record. *See supra*, note 5. So at least with respect to the admissibility of evidence, there *was* uniform application of the law. Yet now the circuits have split, with some Courts of Appeals using the new method, and others abiding by longstanding precedent. So it seems that his interpretation has been counterproductive toward his own stated objective, in that the prior jurisprudential accord has been replaced by competing interpretations. Regardless, these kinds of arguments—*i.e.*, those rooted in policy and pragmatism—are only viable where Congress has not spoken directly to the statutory question before the court. Here, as already explained, Congress has spoken directly to the issue, so our inquiry has reached its end. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).

## V.

Returning to the case before us, we find that the Board of Immigration Appeals looked beyond the conviction record to conclude that Silva-Trevino had been convicted of a crime involving moral turpitude. Our precedent does not permit such an inquiry. *Amouzadeh*, 467 F.3d at 455. We therefore vacate the decision of the Board and remand for further proceedings consistent with the

No. 11-60464

standards stated herein.  As a consequence, we need not reach petitioner's argument that the earlier proceedings violated due process.

Petition GRANTED, decision VACATED, and case REMANDED.