# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2601

_____

Max Villatoro

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 16, 2014
Filed: July 28, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

SMITH, Circuit Judge.

Max Villatoro, a native and citizen of Honduras, petitions for review of the Board of Immigration Appeals' (BIA) decision, affirming the immigration judge's (IJ) pretermission of his application for cancellation of removal under § 240A(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1229b(b), because of Villatoro's prior conviction under Iowa Code § 715A.5 for tampering with records. The BIA

concluded that Villatoro's prior conviction was categorically a crime involving moral turpitude (CIMT), rendering him statutorily ineligible for cancellation of removal. *See* 8 U.S.C. §§ 1229b and 1182(a)(2)(A)(i)(I). We deny the petition for review.

## I. *Background*

Villatoro entered the United States without inspection on March 1, 1995. On February 26, 1999, Villatoro pleaded guilty to tampering with records, in violation of Iowa Code § 715A.5. Villatoro was sentenced to 180 days in county jail, sentence suspended, and was placed under an order of supervision for the duration of his suspended sentence.

On August 7, 2006, the Department of Homeland Security (DHS) commenced removal proceedings against Villatoro, charging him with removability under § 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), for being in the United States without admission or parole. Villatoro admitted the allegations set forth in the Notice to Appear and conceded removability.

On May 25, 2007, Villatoro submitted an application for cancellation of removal for certain nonpermanent residents under § 240A(b) of the INA, 8 U.S.C. § 1229b(b). At a hearing on June 20, 2011, the parties agreed that the issue was whether Villatoro's records-tampering conviction was a CIMT, which rendered him statutorily ineligible for cancellation of removal. Villatoro conceded that if his prior conviction constituted a CIMT, then the petty-offense exception contained in 8 U.S.C. § 1182(a)(2)(A)(i)(II) would not apply to him. Following the hearing, the parties submitted briefs on the issue, and Villatoro submitted his record of conviction.

On September 30, 2011, the IJ denied Villatoro's application for cancellation of removal, concluding that Villatoro's records-tampering conviction was categorically a CIMT because the language of Iowa Code §715A.5 "requires both knowledge and the intent to 'deceive . . . injure . . . or to conceal any wrongdoing' by

'falsif(ying), destroy(ing), remov(ing), or conceal(ing) any wrongdoing.'" The IJ noted that the conduct underlying the statute involves fraud.

Villatoro appealed to the BIA, arguing that his conviction was not categorically a CIMT because Iowa Code § 715A.5 prohibits more than fraudulent conduct. As an example, Villatoro asserted that "a person may properly be convicted under Iowa Code § 715A.5 for destroying a written record with the intent not to deceive but to injure someone when that person knows that s/he has no privilege to do so." Villatoro maintained that the IJ erred by not applying the modified categorical approach to determine whether his crime involved moral turpitude. Applying this approach, he argued that his record of conviction shows that the state court made no determination as to his intent in committing the offense; therefore, he asserted, the IJ should have determined that his records-tampering conviction was not a CIMT.

On June 28, 2013, the BIA adopted and affirmed the IJ's decision and dismissed Villatoro's appeal. The BIA concluded that Villatoro's records-tampering conviction under Iowa Code § 715A.5 is categorically a CIMT. First, the BIA "note[d] that the Supreme Court [in *Jordan v. De George*, 341 U.S. 223 (1951),] . . . held that a crime in which fraud is an element is categorically a CIMT." Second, the BIA found that "[a]ll convictions under section 715A.5 of the Code of Iowa require both 'knowing' that the person has no right to commit the act and 'intent.'" Relying on *Hernandez-Perez v. Holder*, 569 F.3d 345, 348 (8th Cir. 2009), the BIA noted that "[m]oral turpitude is typically found in crimes committed intentionally or knowingly." Third, the BIA pointed out that "the 'knowing' acts which constitute a violation under [Iowa Code § 715A.5] are falsifying, destroying, or concealing a written record" and that "[t]he intents constituting a violation of the statute are deception, injury, or concealing wrongdoing." (Citations omitted.) The BIA observed that courts have held that convictions for similar conduct, such as making false statements and concealing criminal activity, constitute crimes involving moral turpitude. Finally, the BIA determined that Villatoro failed to "demonstrate a 'realistic probability, not a

theoretical possibility,' that Iowa *actually* applies the statute to cover non-turpitudinous conduct" because he identified no case "in which the statute has been used to successfully prosecute an offender for committing non-reprehensible acts."

## II. *Discussion*

Villatoro argues that Iowa Code § 715A.5 is not categorically a CIMT because it does not necessarily imply fraud. According to Villatoro, "§ 715A.5 does not include certain elements essential to a finding of fraud in Iowa." Specifically, he asserts that, unlike Iowa's fraud statutes, § 715A.5 contains "no language that speaks to the intent to deprive another of a property right or legal entitlement." And, for the first time on appeal, he asserts that convictions under § 715A.5 exist for nonturpitudinous conduct. Finally, Villatoro contends that, under the modified categorical approach, "no combination of conduct under Iowa Code § 715A.5 reaches the intent to gain a benefit through fraudulent acts." As a result, he asks this court to grant his petition for review and remand to the BIA with instructions to grant his application for cancellation of removal.

"The Attorney General may cancel removal of . . . an alien who is inadmissible or deportable from the United States if the alien . . . has not been convicted of an offense under section 1182(a)(2) . . . of this title . . . ." 8 U.S.C. § 1229b(b)(1)(C). In turn, § 1182(a)(2)(A)(i)(I) includes "a crime involving moral turpitude."

"Since 1891, the immigration laws have directed the exclusion of persons convicted of 'crimes involving moral turpitude.'" *Bobadilla v. Holder*, 679 F.3d 1052, 1054 (8th Cir. 2012) (quoting *Jordan v. De George*, 341 U.S. 223, 229 n.14 (1951)). Congress, however, "has never defined the term; rather, it left the phrase to future administrative and judicial interpretation." *Id*. (quotation and citation omitted). "Without question, the term is ambiguous." *Id*. As a result, "[i]n reviewing the BIA's

decision that [Villatoro] was convicted of a CIMT, we give [*Chevron*][1] deference to the agency's interpretation of the ambiguous statutory phrase, and we uphold its construction as long as it is reasonable." *Id.* (quotation and citation omitted). The BIA defines a CIMT as follows:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se . . . . Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind.

*Id.* (quotation and citations omitted). Additionally, the Attorney General has directed that a CIMT "'requires . . . some form of scienter.'" *Id.* (alteration in original) (quoting *Matter of Silva–Trevino*, 24 I. & N. Dec. 687 (A.G. 2008)).

In *Chanmouny v. Ashcroft*, 376 F.3d 810 (8th Cir. 2004), we set forth

the BIA's "categorical" approach for examining whether a criminal conviction meets this general definition:

> If the statute defines a crime in which moral turpitude necessarily inheres . . . our analysis ends. However, if the statute contains some offenses which involve moral turpitude and others which do not, it is to be treated as a "divisible" statute, and we look to the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted.

---

[1] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

*Chanmouny*, 376 F.3d at 812, quoting [*In re*] *Ajami*, 22 I. & N. Dec. [949,] 950 [(BIA 1999)]. This categorical approach is consistent with Supreme Court decisions determining whether a prior conviction was a violent felony under the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e)(2)(B). *See Taylor v. United States*, 495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990); *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005).

*Id*. at 1054–55.

Because circuit courts "varied in how they determined whether a particular criminal statute was sufficiently 'categorical,' and in the extent to which they deferred to the BIA's analysis of state criminal statutes," the Attorney General "'establish[ed] a uniform framework for ensuring that the Act's moral turpitude provisions are fairly and accurately applied.'" *Id*. at 1055 (quoting *Silva–Trevino*, 24 I. & N. Dec. at 688). The *Silva-Trevino* framework "retain[s] the basic categorical approach but" sets forth a three-step process for determining whether a conviction is a CIMT. *Id*.[2]

_____

[2]One panel of this court "initially rejected the *Silva-Trevino* approach, but a later panel held that the opinion warrants deference." *Silva-Trevino v. Holder*, 742 F.3d 197, 200 n.1 (5th Cir. 2014) (citing *Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) ("We are bound by our circuit's precedent, and to the extent *Silva-Trevino* is inconsistent, we adhere to circuit law); *Bobadilla*, 679 F.3d at 1057 ("We conclude that the methodology is a reasonable interpretation of the statute and therefore must be given deference by a reviewing court.")). Assuming that an intracircuit split exists, resolution of the present case does not require us to address whether the *Silva-Trevino* methodology is an appropriate way of determining whether a crime involves moral turpitude because we conclude that a records-tampering conviction under Iowa law is categorically a CIMT under the "rigid categorical approach," *Bobadilla*, 679 F.3d at 1058, and the *Silva-Trevino* framework. *See Nino v. Holder*, 690 F.3d 691, 695 (5th Cir. 2012) ("Many of the arguments presented by the parties and *amici* concern the degree of deference owed the Attorney General's opinion in *Silva–Trevino*. As we deem Banda's offense to be one for moral turpitude under our precedents as well as under *Silva–Trevino*, we need not resolve that dispute

At issue in the present case is step one of that procedural framework—the categorical approach.[3] Under this approach, "the inquiry is terminated if the statute at issue categorically either requires or excludes conduct involving moral turpitude." *Prudencio v. Holder*, 669 F.3d 472, 479 (4th Cir. 2012). But if "there is a 'realistic probability' that the statute could be applied to encompass conduct that does not involve moral turpitude, as well as conduct that does, the inquiry must continue to a second step of analysis." *Id*. (citations omitted).

Applying the categorical approach, we conclude that Villatoro's conviction for tampering with records under Iowa Code § 715A.5 is a CIMT. It provides that "[a] person commits an aggravated misdemeanor if, *knowing* that the person has no privilege to do so, the person *falsifies, destroys, removes, or conceals* a writing or record, with the *intent to deceive or injure* anyone or *to conceal* any wrongdoing." (Emphases added.)

_____

here."); *Da Silva Neto v. Holder*, 680 F.3d 25, 29 n.6 (1st Cir. 2012) ("We need not decide today whether we will follow the third step of the AG's framework, which has proven controversial."); *Castillo-Torres v. Holder*, 394 F. App'x 517, 520–21 (10th Cir. 2010) ("But the actual analysis by both the IJ and the BIA in this case did not involve any of the alleged errors in the *Silva–Trevino* approach. Both tribunals looked solely at the elements of each Utah offense and decided that any commission of the offense would involve moral turpitude. Therefore, we need not address whether we agree with *Silva–Trevino* in that respect.").

[3]Under step two, "'if the categorical inquiry does not resolve the question, look to the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript.'" *Bobadilla*, 679 F.3d at 1056 (quoting *Silva-Trevino*, 24 I. & N. Dec. at 704). Under step three, "if the record of conviction does not resolve the inquiry, consider any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question." *Id*. (quoting *Silva-Trevino*, 24 I. & N. Dec. at 704).

"The Supreme Court has instructed that 'fraud has consistently been regarded as . . . within the scope of moral turpitude.'" *Rios-Diaz v. Holder*, 543 F. App'x 617, 618 (8th Cir. 2013) (unpublished per curiam) (alteration in original) (quoting *Jordan*, 341 U.S. at 229).

> Whatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude . . . . The phrase "crime involving moral turpitude" has without exception been construed to embrace fraudulent conduct.

*Jordan*, 341 U.S. at 232 (holding that the crime of conspiracy to defraud the United States of taxes on distilled spirits was a "crime involving moral turpitude" so as to require deportation of an alien who had been twice convicted and sentenced for such crime). "Moreover, as the BIA has explained, 'where fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude.'" *Beltran-Rubio v. Holder*, 13-9565, 2014 WL 1690754, at *3 (10th Cir. Apr. 30, 2014) (quoting *Matter of Flores*, 17 I. & N. Dec. 225, 228 (1980)).

"Critical to a finding of moral turpitude is the intent required by the statute under which the petitioner was convicted." *Hernandez-Perez v. Holder*, 569 F.3d 345, 348 (8th Cir. 2009) (citation omitted). Typically, moral turpitude is "found in crimes committed intentionally or *knowingly*." *Id*. (emphasis added) (citation omitted). In the present case, § 715A.5 requires that the crime be committed "knowingly."

Additionally, § 715A.5 requires "the intent to *deceive* or *injure* anyone or to *conceal* any wrongdoing." (Emphases added.) "Crimes involving the intent to *deceive* or defraud are generally considered to involve moral turpitude." *Lateef v. Dep't of Homeland Sec.*, 592 F.3d 926, 929 (8th Cir. 2010) (emphasis added) (citing *Jordan*, 341 U.S. at 232). Even "non-fraudulent crimes of moral turpitude generally involve

an intent to *injure*." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1213 (9th Cir. 2013) (emphasis added) (citation omitted). And because "fraud may be inferred from conduct, the likely effect of which would be to mislead or conceal," courts have held that intentionally concealing criminal behavior involves moral turpitude. *Smalley v. Ashcroft*, 354 F.3d 332, 338 (5th Cir. 2003); *see also Padilla v. Gonzales*, 397 F.3d 1016, 1020–21 (7th Cir. 2005).

Our conclusion that a records-tampering conviction is categorically a CIMT is buttressed by Iowa case law. Although Iowa case law interpreting § 715A.5 is scant, we find particularly instructive the Iowa Supreme Court's discussion of whether tampering with records under § 715A.5 is a CIMT in the context of attorney discipline. *See Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Romeo*, 554 N.W.2d 552, 553 (Iowa 1996). In *Romeo*, a lawyer's conviction for two counts of record tampering under § 715A.5 resulted in the Iowa Supreme Court Board of Ethics and Conduct charging the lawyer with violating several sections of the Iowa Code of Professional Responsibility. *Id*. Iowa Supreme Court rules "permit license revocation or suspension for any lawyer convicted of a misdemeanor '*involving moral turpitude*.'" *Id*. at 554 (emphasis added) (citing Iowa Sup. Ct. R. 118.10). "In relation to lawyer conduct, the term 'moral turpitude' connotes behavior involving 'fraudulent or dishonest intent.'" *Id*. (quoting *Comm. on Prof'l Ethics & Conduct v. Cody*, 412 N.W.2d 637, 639 (Iowa 1987)). The Iowa Supreme Court noted that § 715A.5 "require[d] proof that a writing or record has been falsified 'with the intent to deceive . . . or to conceal any wrongdoing.'" *Id*. (omitting "or injure anyone" without explanation). Based on the statute's plain language, the Iowa Supreme Court held that "the conviction, *on its face*, involves moral turpitude." *Id*. (emphasis added).

The Iowa Supreme Court's definition of "moral turpitude" as "fraudulent or dishonest intent" in the context of attorney discipline is substantially similar to this court's recognition, in the immigration context, that "[c]rimes involving the intent to deceive or defraud are generally considered to involve moral turpitude." *Lateef*, 592

F.3d at 929 (citations omitted). The Iowa Supreme Court conclusively held in *Romeo* that the lawyer's conviction under § 715A.5 for falsifying a writing or record "with the intent to deceive . . . or to conceal any wrongdoing" "on its face, involves moral turpitude." 554 N.W.2d at 554 (quotation omitted).[4] Because of the substantial similarity between the Iowa Supreme Court's definition of "moral turpitude" and our definition of that term in the immigration context, we see no sound legal basis for rejecting the Iowa Supreme Court's conclusion that a conviction under § 715A.5 "on its face, involves moral turpitude." *Id*.[5]

Because we agree with the BIA that a records-tampering conviction under § 715A.5 is categorically a CIMT, we must determine whether Villatoro showed the

---

[4]The Iowa Supreme Court, without explanation, omitted the "intent to . . . injure anyone" in concluding that a conviction under § 715A.5 was facially a CIMT. But, as explained *supra*, we find that such an intent falls within a CIMT.

[5]Villatoro relies on *Bobadilla* to support his argument that a conviction under § 715A.5 is not categorically a CIMT. In *Bobadilla*, we remanded to the BIA to determine whether an alien's conviction under a Minnesota statute for giving a false name to a peace officer was a CIMT. 679 F.3d at 1052 (citing Minn. Stat. § 609.506, Subd. 1). In doing so, we noted that "[t]he [Minnesota] statute does not require proof that the 'intent to obstruct justice' was successful, or that it misled the police officer even for a moment" and found that "the record reflects a 'realistic probability' that Minnesota would apply § 609.506, Subd. 1, to conduct that does not involve moral turpitude." *Id*. at 1058. But *Bobadilla* does not alter the principle that "[c]rimes involving the intent to deceive . . . are generally considered to involve moral turpitude." *Lateef*, 592 F.3d at 929 (citations omitted). In *Bobadilla*, we recognized that "'[g]iving a false name in order to avoid arrest or investigation or to pass blame to another would be sufficient to show an intentional obstruction of justice.'" *Id*. at 1058 n.7 (quoting *State v. Russell*, No. C9–01–2215, 2002 WL 31455272, at *3 (Minn.App. Nov. 5, 2002) (unpublished)); *see also id*. at 1058 n.8 ("By contrast, the conduct supporting the gross misdemeanor conviction for violating § 609.506, Subd. 2, in *Russell* 2002 WL 31455272, at *3, clearly did involve moral turpitude.").

BIA a "'realistic probability, not a theoretical possibility'" that Iowa *actually* applies the statute to non-turpitudinous conduct. *Bobadilla*, 679 F.3d at 1055 (quoting *Silva-Trevino*, 24 I. & N. Dec. at 697). As the BIA explained, Villatoro failed to identify to the BIA "any actual case in which a defendant was convicted of Tampering with records, under section 715A.5 of the Code of Iowa, where the conduct was not turpitudinous." And, on appeal, the lone case on which Villatoro relies in an attempt to satisfy his burden *does not* establish a realistic probability that Iowa actually applies the statute to non-turpitudinous conduct. *See State v. Walker*, 574 N.W.2d 280 (Iowa 1998) (repeatedly characterizing the defendant's intent as an "intent to deceive").

Therefore, we hold that the BIA properly determined that Villatoro's conviction for records tampering under Iowa Code § 715A.5 is categorically a CIMT.

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____