# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2024
_____

Gerardo Perez Alonzo

*Petitioner*

v.

Loretta E. Lynch, Attorney General of United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 17, 2015
Filed: April 22, 2016

_____

Before SMITH, BYE, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Gerardo Perez Alonzo ("Perez") petitions for review of a decision of the Board of Immigration Appeals (BIA) dismissing his appeal from an immigration judge's (IJ) decision (1) finding him removable under 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two or more crimes involving moral turpitude (CIMT) not arising out of a single scheme of criminal misconduct, and (2) denying his application for cancellation of removal. The BIA determined that Perez's convictions for domestic

abuse assault, third or subsequent offense, in violation of Iowa Code Annotated § 708.2A(4), categorically constitute CIMTs. For the reasons set forth below, we grant the petition for review, vacate the order of removal, and remand to the BIA for proceedings consistent with this opinion.

## I. *Background*

Perez, a native and citizen of Mexico, was admitted to the United States at El Paso, Texas, on September 15, 1998, as a lawful permanent resident. On November 19, 2013, the government initiated removal proceedings against Perez by filing a Notice to Appear (NTA). The NTA charged Perez with removability as an alien convicted of two separate CIMTs under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(ii). The NTA alleged that Perez was convicted on October 18, 2011, in the Iowa District Court "for the offense of Assault Domestic Abuse, Third Offense (FECR172798), in violation of Iowa Code Section 708.2A(4) for which a period of imprisonment of not to exceed 5 years was imposed." The NTA alleged that on that same date Perez was also convicted in the same court "for the offense of Assault Domestic Abuse, Third or Subsequent Offense (FECR179051), in violation of Iowa Code Section 708.2A(4) for which a period of imprisonment of not to exceed 5 years was imposed." According to the NTA, "[t]hese crimes did not arise out of a single scheme of criminal misconduct."

Perez denied the factual allegations related to the criminal convictions set forth in the NTA. The government introduced into evidence an I-213 Record of Deportable/Inadmissible Alien and 41 pages of supporting documents, including six pages of certified conviction records, which showed the following. In August 2004, Perez was convicted in the Iowa District Court "for the offense of Assault Domestic Abuse Causing Bodily Injury in violation of Iowa Code Section 708.2A(2)(b) for which a period of imprisonment of not to exceed 180 days was imposed." In October 2007, Perez was convicted in the Iowa District Court "for the offense of Assault Domestic Abuse Causing Bodily Injury in violation of Iowa Code

-2-

Section . . . 708.2A(3)(b) for which a period of imprisonment of not to exceed 180 days was imposed." The documents also set forth Perez's two convictions on October 18, 2011, for third-offense assault domestic abuse under Iowa Code Annotated § 708.2A(4). The "Trial Information" related to the first October 18, 2011 conviction states that

> *GERARDO A. PEREZ*[,] on or about the 12th day of November, 2010, in Black Hawk County, Iowa did:
>
> . . . assault Lisa Ohlenkamp, a family or household member, a person he/she has resided with during the past year, parents of the same minor children, and did cause bodily injury[.] The defendant having been previously convicted for Assault Domestic Abuse Causing Bodily Injury . . . on August 3, 2004, . . . and Assault Domestic Abuse 2nd Offense . . . on October 15, 2007, . . . in violation of Section 708.2A(4) of the Iowa Criminal Code.

The "Trial Information" related to the second October 18, 2011 conviction provides that

> *GERARDO A. PEREZ*[,] on or about the 27th day of September, 2011, in Black Hawk County, Iowa did:
>
> . . . assault Lisa Ohlenkamp, a family or household member, a person he/she has resided with during the past year, parents of the same minor children[.] The defendant having been previously convicted for Assault Domestic Abuse Causing Bodily Injury . . . on August 3, 2004, and Assault Domestic Abuse Causing Bodily Injury . . . on October 15, 2007, . . . in violation of Section 708.2A(4) of the Iowa Criminal Code.

Perez objected to introduction of these documents and moved to terminate proceedings, asserting that he was not removable as charged. The IJ received the documents into evidence, denied Perez's motion to terminate, and found him removable

as charged. In making this finding, the IJ applied "[t]he *Silva-Trevino* [*I*][1] framework[, which] retain[s] the basic categorical approach but sets forth a three-step process for determining whether a conviction [under a particular criminal statute] is a CIMT." *Villatoro v. Holder*, 760 F.3d 872, 876 (8th Cir. 2014) (fifth alteration in original) (footnote, quotation, and citation omitted). "Under this approach, the inquiry is terminated if the statute at issue categorically either requires or excludes conduct involving moral turpitude." *Id*. at 877 (quotation and citation omitted). However, if "a realistic probability" exists "that the statute could be applied to encompass conduct that does not involve moral turpitude, as well as conduct that does, the inquiry must continue to a second step of analysis." *Id*. (quotations and citation omitted). "Under step two, if the categorical inquiry does not resolve the question, look to the alien's record of conviction, including documents such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, and the plea transcript." *Id*. at 877 n.3 (quotations and citations omitted). Finally, "if the record of conviction does not resolve the inquiry," the adjudicator proceeds to step three and "consider[s] any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question." *Id.* (quotation and citation omitted).

Applying step one of the *Silva-Trevino I* framework, the IJ first concluded that Perez's convictions are not categorically CIMTs. The IJ reasoned that although Iowa's definition of assault "requires intentional conduct, it encompasses de minimis harm, such as insulting or offensive physical contact." "Proceeding to the modified categorical approach," the IJ found that Perez's "records of conviction resolve the CIMT inquiry with respect to one of the two assaults in question." He noted that "both assaults were on a person with whom [Perez] shared a 'familial' relationship of trust and dependency" and concluded that this constituted "an aggravating factor that elevates the moral depravity of his conduct." (Citing *In re Tran*, 21 I. & N. Dec. 291,

---

[1]*Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (A.G. 2008) ("*Silva-Trevino I*"), *vacated*, *Matter of Silva-Trevino*, 26 I. & N. Dec. 550 (A.G. 2015) ("*Silva-Trevino II*").

294 (BIA 1996).) He then pointed out that while "[t]he Trial Information for the November 12, 2010, assault states that [Perez] 'did cause bodily injury' to his victim," the Trial Information for the September 27, 2011 assault "d[oes] not indicate that the assault caused bodily injury or involved the infliction of any tangible harm." (Citations omitted.) As a result, the IJ found that "the second assault may have involved mere offensive touching or other de minimis harm, and cannot be deemed a CIMT based upon the record of conviction." (Citing *In re Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007).) Applying the third step of the *Silva-Trevino I* framework, the IJ then examined "any other 'necessary or appropriate' evidence in the record." (Quoting *Silva-Trevino I*, 24 I. & N. Dec. at 704.) He found that "police reports indicate that [Perez's] September 27, 2011, assault involved not mere offensive physical contact, but serious bodily harm." (Citation omitted.) Based on the records of conviction and this additional evidence, the IJ concluded that Perez's two October 18, 2011 convictions for domestic abuse assault, third or subsequent offense, in violation of Iowa Code Annotated § 708.2A(4), constitute CIMTs because they "involved intentional conduct, were committed against a person with whom [Perez] shared a familial relationship, and resulted in actual bodily injury." Perez subsequently filed an application for cancellation of removal for a non-permanent resident, which the IJ denied as a matter of discretion. The IJ denied Perez's request for voluntary departure and ordered that he be removed to Mexico.

Perez appealed to the BIA, which dismissed his appeal. The BIA concluded that "even though a single domestic violence conviction, under the Iowa statute at issue, would not constitute a [CIMT], [Perez's] third and fourth recidivist convictions for domestic violence do constitute turpitudinous crimes." As a threshold matter, the BIA recognized that for an assault offense to be a CIMT, it must "require the infliction of some 'tangible harm' to the victim." (Quoting *In re Sanudo*, 23 I. & N. Dec. 968, 972 (BIA 2006).) Examining Iowa's assault statute, Iowa Code Annotated § 708.1, the BIA "note[d] that the statute does not require the actual infliction of any harm to the victim[,] such that the actual infliction of harm and/or resultant injury is not an element

of the offense." But because Perez had two convictions for "a third or subsequent offense of domestic abuse assault" under Iowa Code Annotated § 708.2A(4), the BIA characterized the issue as whether those two convictions "involve an aggravating factor or factors such that they constitute [CIMTs]."

Two cases informed the BIA's conclusion that aggravating factors may transform an otherwise non-CIMT offense into a CIMT: *In re Lopez-Meza*, 22 I. & N. Dec. 1188 (BIA 1999), and *In re Torres-Varela*, 23 I. & N. Dec. 78 (BIA 2001). The BIA observed that in *Lopez-Meza*, it had held that a "'simple DUI' offense" under Arizona law is not a CIMT because it lacks a culpable mental state requirement such as intent or knowledge. But the offense of DUI while driving on a suspended license under the statute at issue constitutes a CIMT because a conviction under that provision requires that the defendant have had knowledge that he was not permitted to drive in order to be convicted. The BIA thus concluded that the "'aggravating' factor" was the defendant's "*knowledge* that he was not permitted to drive under any circumstances." (Citing *Lopez-Meza*, 22 I. & N. Dec. at 1194.) Construing *Lopez-Meza*, the BIA observed that "[i]t was the existence of the fact of knowledge of his ineligibility to drive that elevated [Lopez-Meza's] conviction from a simple repeated DUI offense to a [CIMT]." (Citing *Lopez-Meza*, 22 I. & N. Dec. at 1194.)

The BIA then discussed *Torres-Varela*, in which it had concluded that the offense of DUI, third or subsequent offense, in violation of Arizona law, is "not elevated to that of a [CIMT] solely by virtue of the existence of multiple convictions." (Citing *Torres-Varela*, 23 I. & N. Dec. at 85–86.) "[U]nlike the statutes in *Matter of Lopez-Meza*, the statutes in *Matter of Torres-Varela*, did not require any culpable mental state for conviction nor did they require the existence of knowledge." (Citing *Torres-Varela*, 23 I. & N. Dec. at 85.) *Torres-Varela* held that "absent any aggravating elements, multiple convictions for the same offense by themselves do not elevate a conviction into one involving moral turpitude." (Citing *Torres-Varela*, 23 I. & N. Dec. at 86.)

-6-

Applying these cases, the BIA concluded that a § 708.2A(4) conviction for third-offense assault domestic abuse under Iowa law "involves sufficient aggravating factors, absent the actual infliction of harm and/or resultant injury to a victim, that transform the offense, which would otherwise not involve moral turpitude, into an offense involving moral turpitude." The BIA identified the aggravating factor as the Iowa domestic violence statute's requirement of "the intent to voluntarily commit an act that is an assault." (Citing *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414 (Iowa 1997).) According to the BIA, to sustain a conviction under the statute, Perez "must have intentionally and repeatedly committed an act of assault against a victim with whom he had a domestic relationship." The BIA pointed out that "the repetitive and intentional nature of the crime of domestic abuse assault . . . subjected [Perez] to an elevation in the class of his crimes and an enhancement in the penalty for his offenses." (Citing Iowa Code Ann. § 708.2A(4).) The BIA found that the offense constituted a CIMT because it "involv[ed] the *repeated* (three times or more) commission of *intentional* acts of domestic assault"; the BIA explained that it was the repetitive nature of the crime, coupled with the intentional-act requirement, that distinguished the offense from the offense at issue in *Torres-Varela*, where no intent element existed. Instead, the BIA found the case "more akin" to *Lopez-Meza* in which "the elements of knowledge and repetition[] elevated the offense to one involving moral turpitude." (Citing *Lopez-Meza*, 22 I. & N. Dec. at 1195.) As a result, the BIA determined that Perez's "third and fourth convictions" constitute CIMTs and affirmed the IJ's finding of removability. The BIA also affirmed the IJ's discretionary denial of cancellation of removal.

Perez petitioned this court for review, and the government filed an unopposed motion to remand to the BIA for reconsideration of whether Iowa Code Annotated § 708.2A(4) is categorically a CIMT. The government noted that a remand would permit the BIA to "further clarify whether Iowa Recidivist Domestic Abuse Assault can constitute a [CIMT] when the recidivist offense consists of having committed multiple violations of Domestic Abuse Assault." (*Comparing Torres-Varela*,

23 I. & N. Dec. at 78, *with Lopez-Meza*, 22 I. & N. Dec. at 1196.) The government stated that, in the alternative, the BIA "may consider whether the charge of removability should be sustained under an analysis other than the pure categorical analysis." (Citing *Silva-Trevino I*, 24 I. & N. Dec. at 687.)

During the pendency of the remand, the Attorney General (AG) vacated *Silva-Trevino I* in its entirety. *See Silva-Trevino II*, 26 I. & N. Dec. at 550. The AG explained that the vacatur "does not mean that I disapprove of every aspect of that opinion." *Id.* at 553. Specifically, the AG stated that "[n]othing in this order is intended to affect Board determinations that an offense entails or does not entail 'reprehensible conduct and some form of scienter' and is or is not a [CIMT] for that reason." *Id.* at 553 n.3 (quoting *Silva-Trevino I*, 24 I. & N. Dec. at 706 n.5). "In light of this vacatur," the AG left it for the BIA to address, "in this case and other cases as appropriate," how "to determine whether a particular criminal offense is a [CIMT]" and when the modified categorical approach may be used to determine whether an offense constitutes a CIMT. *Id.* at 553–54.

On remand, the BIA acknowledged that it had previously analyzed whether Perez's § 708.2A(4) convictions constitute CIMTs under the now-vacated *Silva-Trevino I* framework but nonetheless found that "the substance of [its] decision was based on the application of [its] well-established precedent decisions relating to whether particular 'assault' offenses involve the necessary reprehensible conduct and degree of scienter to be [CIMTs] and relating to whether a particular repeated offense can constitute a [CIMT]." Applying the categorical approach, the BIA once again determined that a conviction under § 708.2A(4) constitutes a CIMT because it "involves the intent to commit an act of assault, assault upon a person whom society views as deserving of special protection, *and* repeated assaults upon the special victim." (Footnote omitted.) The BIA explained that "the statute expressly requires the intent to voluntarily commit an act that is an assault." (Citing *Bacon*, 567 N.W.2d at 212.) According to the BIA,

> [i]t is the building of additional aggravating factors that distinguishes [Perez's] offense from a single offense of domestic abuse assault, i.e., the repetitive nature of the offense in this case is another aggravating factor in addition to those already involved in the offense of domestic abuse assault such that the offense becomes elevated to one involving moral turpitude.

(Citation omitted.) The BIA dismissed Perez's appeal, and Perez now petitions for review.

## II. *Discussion*

In his petition for review, Perez argues that his two convictions for domestic abuse assault, third or subsequent offense, in violation of Iowa Code Annotated §§ 708.1 and 708.2A(4), do not constitute CIMTs because a *single* domestic abuse conviction under § 708.2A does not constitute a CIMT. Applying the categorical approach, he argues that because the least of the acts criminalized under § 708.2A is not a CIMT, he cannot be found removable on that basis. He contends that the statute of conviction is merely a recidivist statute. For that reason, he argues that the BIA's determination that his recidivist simple-assault convictions constitute CIMTs is contrary to the BIA's precedent in *Torres-Varela*. He maintains that the BIA's failure to follow its own precedent violated his due process rights under the Fifth Amendment.

"Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). We generally lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense . . . covered by section 1227(a)(2)(A)(ii)." 8 U.S.C. § 1252(a)(2)(C). But we possess jurisdiction to "review . . . constitutional claims or questions of law raised upon a petition for review." *Id*. § 1252(a)(2)(D). Whether a conviction under § 708.2A "qualifies as a [CIMT] is a legal question, subject to de novo review." *Gomez-Gutierrez v. Lynch*, 811 F.3d

1053, 1058 (8th Cir. 2016) (citation omitted). "In analyzing that question, we afford substantial deference to the Board's interpretation of ambiguous statutory language in the INA and will uphold its construction if it is reasonable." *Id.* (citation omitted).

Although "the immigration laws have directed the exclusion of persons convicted of 'crimes involving moral turpitude'" since 1891, "Congress has never defined the term." *Bobadilla v. Holder*, 679 F.3d 1052, 1054 (8th Cir. 2012) (citations omitted). "In the absence of a statutory definition," the BIA has provided the following definition for a CIMT:

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.

*Gomez-Gutierrez*, 811 F.3d at 1058 (quotations and citations omitted). Furthermore, to constitute a CIMT, the offense must have "'a culpable mental state and reprehensible conduct.'" *Id.* (quoting *In re Medina*, 26 I. & N. Dec. 79, 82 (BIA 2013)). As explained *supra*, "[n]othing in th[e] [AG's] order [vacating *Silva-Trevino I*] [was] intended to affect Board determinations that an offense entails or does not entail 'reprehensible conduct and some form of scienter' and is or is not a [CIMT] for that reason." *Silva-Trevino II*, 26 I. & N. Dec. at 553 n.3 (quoting *Silva-Trevino I*, 24 I. & N. Dec. at 706 n.5). "Crimes committed intentionally or knowingly have historically been found to involve moral turpitude." *Solon*, 24 I. & N. Dec. at 240 (citing *Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000)). Additionally, moral turpitude may exist "in criminally reckless conduct, i.e., conduct that reflects a conscious disregard for a substantial and unjustifiable risk." *Id.* (citations omitted).

"Assault may or may not involve moral turpitude." *Id.* at 241 (citing *Matter of Danesh*, 19 I. & N. Dec. 669, 670 (BIA 1988)). "[T]he BIA and various courts have declined to classify [simple assault] as a [CIMT]. *Simple assault* typically is a general intent crime, and it is thus different in character from those offenses that involve 'a vicious motive, corrupt mind, or evil intent.'" *Chanmouny v. Ashcroft*, 376 F.3d 810, 814–15 (8th Cir. 2004) (emphasis added) (quoting *Matter of O—*, 3 I. & N. Dec. 193, 194–95 (BIA 1948)); *see also Solon*, 24 I. & N. Dec. at 241 (same).

Furthermore, "not all crimes involving the injurious touching of another person reflect moral depravity on the part of the offender." *Solon*, 24 I. & N. Dec. at 241 (citing *Sanudo*, 23 I. & N. Dec. at 971). This is because "[m]any simple assault statutes prohibit a wide range of conduct or harm, including de minimis conduct or harm, such as offensive or provocative physical conduct or insults." *Id.* (citing, *inter alia*, Iowa Code Ann. § 708.1).

In summary, "neither the offender's state of mind nor the resulting level of harm, alone, is determinative of moral turpitude." *Id.* (citing *Sanudo*, 23 I. & N. Dec. at 972–73 (finding that the alien's conviction for domestic battery under California law was not a CIMT because, even though the offense required intent, it required only a minimal touching without proof of an actual injury); *In re Fualaau*, 21 I. & N. Dec. 475, 478 (BIA 1996) ("In order for an assault of the nature at issue in this case to be deemed a crime involving moral turpitude, the element of a reckless state of mind must be coupled with an offense involving the infliction of serious bodily injury."); *Matter of Perez-Contreras*, 20 I. & N. Dec. 615, 619 (BIA 1992) (finding that a conviction for assault in the third degree under Washington law is not a CIMT where intentional or reckless conduct is excluded from the statutory definition of the crime)). Instead, "at least in the context of assault crimes, a finding of moral turpitude involves an assessment of both the state of mind *and* the level of harm required to complete the offense." *Id.* at 242 (emphasis added). As the BIA has explained:

-11-

[I]ntentional conduct resulting in a meaningful level of harm, which must be more than mere offensive touching, may be considered morally turpitudinous. However, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm. This body of law, then, deems intent to be a crucial element in determining whether a crime involves moral turpitude.

*Id*. (citation omitted).

Certainly, "assault and battery offenses that necessarily involve[] the *intentional* infliction of *serious* bodily injury on another have been held to involve moral turpitude because such intentionally injurious conduct reflects a level of immorality that is greater than that associated with a simple offensive touching." *Sanudo*, 23 I. & N. Dec. at 971 (citations omitted). Additionally, moral turpitude is often found

in assault and battery offenses that are defined by reference to the infliction of bodily harm upon a person whom society views as deserving of special protection, such as a child, a domestic partner, or a peace officer, because the intentional or knowing infliction of injury on such persons reflects a degenerate willingness on the part of the offender to prey on the vulnerable or to disregard his social duty to those who are entitled to his care and protection.

*Id*. at 971–72 (citations omitted).

While "the presence of an aggravating factor," such as "serious physical injury or the use of a deadly weapon," "can be important in determining whether a particular assault amounts to a [CIMT]," "the need for, and the nature of, any aggravating factor is affected by the mental state required for the conviction." *Solon*, 24 I. & N. Dec. at 245 (citations omitted). "The presence or absence of an aggravating factor is not

-12-

determinative." *Id.* at 246. For example, in *Solon*, the BIA found that the offense of assault in the third degree under New York law constituted a CIMT even though it lacked an aggravating factor because it required both specific intent and physical injury. *Id.*

By contrast, in *In re Sejas*, 24 I. & N. Dec. 236 (BIA 2007), the BIA found "that, although the assault statute at issue contained an aggravating factor—assault against a member of one's family or household—the statute nevertheless was not categorically a [CIMT] because it 'does not require the actual infliction of physical injury and may include any touching, however slight.'" *Ceron v. Holder*, 747 F.3d 773, 783 (9th Cir. 2014) (quoting *Sejas*, 24 I. & N. Dec. at 238). In *Sejas*, the alien was charged as removable based on two convictions "for assault and battery against his wife" in violation of Virginia law. 24 I. & N. Dec. at 236. "While the Virginia law of assault and battery requires an intent or imputed intent to cause injury, 'the intended injury may be to the feelings or mind, as well as to the corporeal person.'" *Id.* at 238 (citation omitted). Furthermore, the BIA found that "intent to do 'bodily harm'" under Virginia law could "include offensive touching." *Id.* (citation omitted). As a result, the BIA held that the assault against a member of one's family or household was not categorically a CIMT. *Id.*

Likewise, in *Sanudo*, the BIA found that an alien's domestic battery conviction under California law was not categorically a CIMT because "[t]he minimal conduct necessary to complete such an offense in California is simply an intentional 'touching' of another without consent. Thus, one may be convicted of battery in California without using violence and without injuring *or even intending to injure the victim*." 23 I. & N. Dec. at 972 (emphasis added). "Moreover," the BIA found that "in each of the . . . cases that involved battery offenses committed against the members of a protected class, the crimes at issue were defined by statute to require proof of the actual infliction of some tangible harm on the victim." *Id.* (citations omitted). "[B]y contrast, neither the statute of conviction [in *Sanudo*] nor the admissible portion of the [alien's] conviction

-13-

record reflect[ed] that his battery was injurious to the victim or that it involved anything more than the minimal nonviolent 'touching' necessary to constitute the offense." *Id.* at 972–73. As a result, the BIA found that "[i]n the absence of admissible evidence reflecting that the [alien's] offense occasioned actual *or intended physical harm* to the victim, . . . the existence of a current or former 'domestic' relationship between the perpetrator and the victim is insufficient to establish the morally turpitudinous nature of the crime." *Id.* at 973 (emphasis added).

Where, as here, "'the Government alleges that a state conviction qualifies as' a [CIMT] under § 1227(a)(2)(A)(ii), 'we generally employ a 'categorical approach' to determine whether the state offense is comparable to' the listed federal offense." *Gomez-Gutierrez*, 811 F.3d at 1058 (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013)). "Under this approach we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition . . . ." *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)). The Supreme Court has explained that "a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved . . . facts equating to [the] generic [federal offense]." *Id.* (alterations in original) (quotations and citation omitted).

"An alien's actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." *Mellouli v. Lynch*, 135 S. Ct. 1980, 1986 (2015) (quoting *Moncrieffe*, 133 S. Ct. at 1684). The Supreme Court has cautioned that "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 133 S. Ct. at 1684–85 (quoting *Gonzales*, 549 U.S. at 193).

Here, Perez has four domestic-abuse assault convictions—one in violation of Iowa Code Annotated § 708.2A(2)(b); one in violation of § 708.2A(3)(b); and two in violation of § 708.2A(4). Section 708.2A(2)(b) provides that "[o]n a first offense of domestic abuse assault, the person commits . . . [a] serious misdemeanor, if the domestic abuse assault *causes bodily injury or mental illness*." (Emphasis added.) Section 708.2A(3)(b) provides that

> on a second domestic abuse assault, a person commits . . . [a]n aggravated misdemeanor, if the first offense was classified as a simple or aggravated misdemeanor, and the second offense would otherwise be classified as a serious misdemeanor, or the first offense was classified as a serious or aggravated misdemeanor, and the second offense would otherwise be classified as a simple or serious misdemeanor.

The government alleged Perez's removability in the NTA based on his third and fourth convictions under § 708.2A(4), which provides that "[o]n a third or subsequent offense of domestic abuse assault, a person commits a class 'D' felony."

"Domestic abuse assault" under § 708.2A "means an assault, as defined in section 708.1, which is domestic abuse as defined in section 236.2, subsection 2, paragraph 'a', 'b', 'c', or 'd'."[2] Iowa Code Ann. § 708.2A(1). Thus, the classification of

---

[2]Iowa Code Annotated § 236.2(2)(a)–(d) provides:

2. "Domestic abuse" means committing assault as defined in section 708.1 under any of the following circumstances:

a. The assault is between family or household members who resided together at the time of the assault.

b. The assault is between separated spouses or persons divorced from each other and not residing together at the time of the assault.

Perez's domestic-abuse assault convictions as CIMTs is dependent upon the definition of "assault" as provided in § 708.1(2). It states:

> A person commits an assault when, without justification, the person does any of the following:
>
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
>
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
>
> c. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Section 708.1 is a "divisible" statute; that is, it "'sets out one or more elements of the offense in the alternative.'" *United States v. Boman*, 810 F.3d 534, 542 (8th Cir. 2016) (quoting *United States v. Tucker*, 740 F.3d 1177, 1179 (8th Cir. 2014) (en banc); citing *Descamps v. United States*, 133 S. Ct. 2276, 2282 (2013)). Not only do the subsections of § 708.1 set forth alternative ways in which one may violate the statute, but each subsection also provides for various ways to violate the statute, as indicated by the three subsections' use of "or." *See United States v. Bankhead*, 746 F.3d 323, 326 (8th Cir. 2014) ("The hallmark of divisibility is the enumeration of alternative bases for conviction separated by the disjunctive 'or.'"). Some of the

---

c. The assault is between persons who are parents of the same minor child, regardless of whether they have been married or have lived together at any time.

d. The assault is between persons who have been family or household members residing together within the past year and are not residing together at the time of the assault.

alternatives provided for between and within the three subsections set forth in § 708.1 would constitute CIMTs, while others would not. *See Descamps*, 133 S. Ct. at 2283–84; *see also Esparaza-Rodriguez v. Holder*, 699 F.3d 821, 825 (5th Cir. 2012) ("If, however, the statute has multiple subsections or an element phrased in the disjunctive, such that some violations of the statute would involve moral turpitude and others not, we apply the modified categorical approach."). For example, § 708.1(2)(a) and (b) *include* "insulting or offensive" physical contact, which constitutes de minimus harm and not the injurious touching required for a CIMT. *See Solon*, 24 I. & N. Dec. at 241. By contrast, at oral argument, Perez's counsel conceded that the firearm provision of § 708.1(2)(c) would "quite probably" be a CIMT.

Furthermore, other portions of § 708.1(2)(a) and (b) contain the level of harm *and* state of mind necessary to constitute CIMTs. *See Solon*, 24 I. & N. Dec. at 242. First, as to the level of harm, a portion of § 708.1(2)(a) provides that the act "is intended to cause *pain or injury*." (Emphasis added.) And, a portion of § 708.1(2)(b) provides that the act is "intended to place another in fear of *immediate physical contact* which will," among other alternatives, "be painful" or "injurious." (Emphasis added.) These portions of the subsections that focus on physical pain and injury distinguish them from the Virginia statute in *Sejas*, which was broadly construed to encompass injury to feelings or the mind and offensive touching. *See* 24 I. & N. Dec. at 238. Here, other portions of the subsections, as explained *supra*, separately cover offensive touching. Furthermore, § 708.1(2)(a)'s requirement of an intent "to cause pain or injury" and § 708.1(2)(b)'s requirement of an intent "to place another in fear of immediate physical contact which will be painful [or] injurious" distinguishes this case from *Sanudo*, in which the BIA found that one could be convicted under the California statute without "even intending to injure the victim." 23 I. & N. Dec. at

971.[3] By contrast, the identified portions of § 708.1(2)(a) and (b) *do* require "intended physical harm to the victim." *See id.* at 973.

Second, and relatedly, these two subsections do require intentional conduct. Pursuant to § 708.1, "a defendant must commit an act that he intends to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim or to place the victim in fear of physical contact that will be injurious or offensive." *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) (citing Iowa Code Ann. § 708.1(1), (2)). While § 708.1(1) defines "assault" as "a general intent crime," the Iowa Supreme Court has explained that "[b]ecause the elements of these assault alternatives include an act that is done to achieve the additional consequence of causing the victim pain, injury or offensive physical contact, the crime includes a specific intent component." *Fountain*, 786 N.W.2d at 265 (citation omitted) (finding that its "conclusion that assault includes an element of specific intent is not inconsistent with the legislature's action in amending the statute [to state that assault is a general intent crime]"). Therefore, a "continuing requirement [exists] that the State prove specific intent under the first two modes of assault in section 708.1." *State v. Beck*, 854 N.W.2d 56, 63 (Iowa Ct. App. 2014), *as amended* (Aug. 12, 2014).

---

[3]The BIA concluded that § 708.1, in total, "does not require the actual infliction of any harm to the victim such that the actual infliction of harm and/or resultant injury is not an element of the offense." The BIA, however, failed to parse the three subsections of § 708.1 to determine if any one subsection or part of a subsection could constitute a CIMT. We read *Sanudo* as leaving open the possibility that a statute that, unlike the California statute at issue in *Sanudo*, *does* require an intent to injure the victim to sustain an assault conviction can satisfy the harm requirement for a CIMT. *See Sanudo*, 23 I. & N. Dec. at 972 ("Thus, one may be convicted of battery in California without . . . even intending to injure the victim."); *id.* at 973 (noting that no evidence was produced "reflecting that the [alien's] offense occasioned . . . intended physical harm to the victim").

Finally, both § 708.1(2)(a) and (b) contain the aggravating factor of assault against a member of one's family or household. *See* Iowa Code Ann. § 708.2A(1) (defining "domestic abuse assault"); *id*. § 236.2(2) (defining "domestic abuse"). Thus, the portions of § 708.1(2)(a) and (b) that require (1) intentional conduct, (2) harm, and (3) an aggravating factor constitute CIMTs.

In summary, all four of Perez's convictions under Iowa Code Annotated § 708.2A, including his third and fourth convictions under the § 708.2A(4)'s recidivist provision, are dependent upon the definition of "assault" in § 708.1(2). "Because [§ 708.1] is divisible into discrete subsections of turpitudinous acts and non-turpitudinous acts," Perez's domestic-abuse assault convictions do not *categorically* constitute CIMTs. *See Cisneros-Guerrerro v. Holder*, 774 F.3d 1056, 1061 (5th Cir. 2014). We hold that the "BIA therefore erred in declining to review [Perez's] record of conviction[s], under the modified categorical approach, to determine whether [Perez] was convicted under a subsection that describes a CIMT." *See id.* (citation omitted). "Given the circumstances, the prudent course of action is to remand this case to the BIA to consider the issue in the first instance." *See Ceron*, 747 F.3d at 784.

## III. *Conclusion*

For the foregoing reasons, we grant Perez's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

———————————————