# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-1230

———————————————

Amela Dolic

*Petitioner*

v.

William P. Barr,[1] Attorney General of the United States

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: January 15, 2019
Filed: February 20, 2019

——————————

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

——————————

GRUENDER, Circuit Judge.

Amela Dolic petitions for review of the Board of Immigration Appeals ("BIA") decision affirming the immigration judge's ("IJ") denial of her motion to terminate removal proceedings. We deny the petition.

———————————————

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), William P. Barr has been automatically substituted as a party.

Dolic, a native and citizen of Bosnia-Herzegovina, was admitted to the United States in 2006 as a conditional resident, and in 2009 her status changed to lawful permanent resident. In March of 2017, a Missouri state court convicted Dolic of three counts of receiving stolen property and four counts of passing a bad check.

An alien convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct" is removable under the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1227(a)(2)(A)(ii); *see also Gomez-Gutierrez v. Lynch*, 811 F.3d 1053, 1057 (8th Cir. 2016). Based on Dolic's convictions for receiving stolen property and passing bad checks, the Department of Homeland Security ("DHS") charged her with removability. Dolic filed a motion to terminate removal proceedings and alleged that DHS had not demonstrated that her convictions qualified as crimes involving moral turpitude. The IJ denied the petition, finding that Dolic's convictions were for crimes involving moral turpitude, and the BIA affirmed. On appeal, Dolic does not contest the fact of these convictions or that they arose out of multiple schemes of criminal misconduct, but only whether they were for crimes involving moral turpitude.

Whether a conviction qualifies as a crime involving moral turpitude ("CIMT") is a legal question, subject to de novo review. *See Gomez*, 811 F.3d at 1058. "In analyzing that question, we afford substantial deference to the [BIA's] interpretation of ambiguous statutory language in the INA and will uphold its construction if it is reasonable." *Id*. "In the absence of a statutory definition," the BIA has defined a CIMT as one "which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Alonzo v. Lynch*, 821 F.3d 951, 958 (8th Cir. 2016). The Supreme Court has also established that a crime in which fraud is an element meets the definition of a CIMT. *See Bobadilla v. Holder*, 679 F.3d 1052, 1057 (8th Cir. 2012) (citing *Jordan v. De George*, 341 U.S. 223, 229 (1951)).

We do not look to Dolic's particular conduct to determine if it involved moral turpitude because the INA asks whether the *crime of conviction* fits a certain category ("crimes involving moral turpitude"), not whether an alien's *acts* fit that category. *See Bobadilla*, 679 F.3d at 1054-55. Under this categorical approach, "[a]n alien's actual conduct is irrelevant . . . [and] the adjudicator must presume that the conviction rested upon nothing more than the least of the acts criminalized under the state statute." *Alonzo*, 821 F.3d at 960 (internal quotation marks omitted).

When "a statute defines only a single crime with a single set of elements," *Mathis v. United States*, 136 S. Ct. 2243, 2245 (2016), we ask whether the crime "necessarily involved . . . facts equating to" the definition of a CIMT, *see Moncrieffe v. Holder*, 569 U.S. 184, 190 (internal quotation marks omitted). If so, that statute qualifies as a CIMT. *Id*. But, if there is a "realistic probability . . . that the State would apply its statute to conduct that falls outside" the definition of a CIMT, that statute is overbroad and fails to qualify. *Id*. at 206.

Mo. Rev. Stat § 570.120 governs the crime of passing bad checks. It states, in pertinent part:

> 1. A person commits the offense of passing a bad check when he or she:
>
> > (1) With the purpose to defraud, . . . passes a check . . . knowing that it will not be paid by the drawee, or that there is no such drawee; or
> >
> > (2) . . . passes a check . . . knowing that there are insufficient funds in or on deposit with that account for the payment of such check . . . in full . . . upon such funds then outstanding, or that there is no such account or no drawee and fails to pay the check . . . within ten days after receiving actual notice in writing that it has not been paid because of insufficient funds or credit with the drawee or because there is no such drawee.

No party disputes that § 570.120.1 is overbroad, because § 570.120.1(2) allows for a conviction without "a culpable mental state and reprehensible conduct." *Alonzo*, 821 F.3d at 958 (8th Cir. 2016). Therefore, we cannot apply the categorical approach.

But this analysis is not dispositive. Some overbroad statutes define "multiple crimes" and so are "divisible." *Mathis*, 136 S. Ct. at 2249. Where a statute is divisible, we apply the modified categorical approach to determine whether a defendant was convicted pursuant to a "discrete subsection" of the overbroad statute defining a separate crime that "necessarily involved . . . facts equating to" the definition of a CIMT. *See Alonzo*, 821 F.3d at 960, 963 (quoting *Moncrieffe*, 569 U.S. at 190). If so, the crime of conviction still qualifies as a CIMT. *See Id*. at 962.

Thus, whether we can apply the modified categorical approach hinges on whether § 570.120.1 is divisible. *See United States v. Lamb*, 847 F.3d 928, 931 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 1438 (2018). Section 570.120.1 is divisible only if it "effectively creates several different . . . crimes," *Descamps v. United States*, 570 U.S. 254, 264 (2013) (internal quotation marks omitted), by listing alternative elements, not means, *Mathis*, 136 S. Ct. at 2254-55. Elements are "the things the prosecution must prove to sustain a conviction." *Id*. at 2248 (internal quotation marks omitted). Means or "brute facts" are "[h]ow a given defendant actually perpetrated the crime." *Id*. at 2251. To distinguish between elements and means, we may consider "authoritative sources of state law" and the statute's text. *Id*. at 2256. If necessary, we may also "peek" at the record of the prior conviction, but only to determine if the statutory alternatives are elements or means. *Id*. at 2257.

Here, we conclude that § 570.120.1 lists alternative elements and so is divisible. The text contains two subsections that "set forth alternative ways in which one may violate the statute." *See Alonzo*, 821 F.3d at 962 ("The hallmark of divisibility is the enumeration of alternative bases for conviction separated by the disjunctive 'or.'"). Missouri state court decisions treat § 570.120.1's alternative

-4-

paragraphs (1) and (2) as creating independent offenses that are charged separately. *See State v. Carroll*, 41 S.W.3d 878, 882 (Mo. 2001) (en banc) (finding that "[u]nder section 570.120.1(1)" the "crime of passing a bad check is proven by evidence establishing that an accused passed a check with the purpose to defraud, knowing it would not be paid by the drawee" and that "the evidence is sufficient to establish those *elements*" (emphasis added)); *State v. Williams*, 469 S.W.3d 6, 9 (Mo. Ct. App. 2015) ("By electing to charge Defendant with a violation of § 570.120.1(2), one of the *elements* that the State had the burden to prove was that Defendant failed to pay the check 'within ten days . . . .'" (emphasis added)). These state court decisions match the approved jury instructions enacted by the Missouri Supreme Court, which establish that § 570.120.1 contains multiple possible offenses with distinct elements that the "prosecution must prove to sustain a conviction." *Mathis*, 136 S. Ct. at 2256. Three instructions apply to § 570.120.1(1) (all containing "purpose to defraud" as an element) and one instruction applies to § 570.120.1(2) (entitled "Ten Day Notice" and containing no "purpose to defraud" element). *See* MAI-CR 3d 324.30.1-4.

In sum, the text of the statute and Missouri state court authority establish that § 570.120.1(2) is a distinct crime from § 570.120.1(1), which necessarily includes "purpose to defraud" as an element, *see Carroll*, 41 S.W.3d at 882, and so is categorically a CIMT, *see Bobadilla*, 679 F.3d at 1057.

Applying the modified categorical approach, we may look "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Here, the record shows that Dolic pleaded guilty to four charges of passing a bad check pursuant to § 570.120, without specifying a subparagraph. But each of her charging documents contains language that tracks the language of § 570.120.1(1) and includes the element "with the purpose to defraud."

Therefore, we conclude that § 570.120.1(1) was in fact Dolic's crime of conviction in each instance.

Because Dolic's four Missouri convictions for passing a bad check qualify as crimes involving moral turpitude, we need not consider whether her convictions pursuant to Mo. Rev. Stat § 570.080 also qualify.

We deny Dolic's petition.

_____